No. 23-13152

IN THE

# United States Court of Appeals
## FOR THE ELEVENTH CIRCUIT

▸▸◂◂

OTTO CANDIES, LLC, ET AL.,

*Plaintiffs-Appellants,*

– v. –

CITIGROUP INC.,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court
for the Southern District of Florida*, No. 1:16-cv-20725-DPG

## PLAINTIFFS-APPELLANTS' OPENING BRIEF

QUINN EMANUEL URQUHART & SULLIVAN, LLP

David M. Cooper
51 Madison Ave.
New York, NY 10010
(212) 849-7000

Terry L. Wit
50 California St.
San Francisco, CA 94111
(415) 875-6600

Juan P. Morillo
Derek L. Shaffer
Gabriel F. Soledad
Lauren H. Dickie
David H. Needham
1300 I Street N.W.
Washington, DC 20005
(202) 538-8000

John F. O'Sullivan
Laura N. Ferguson
2601 S. Bayshore Dr.
Miami, FL 33123
(305) 402-4880

HOMER BONNER JACOBS ORTIZ, P.A.

Peter W. Homer
Gregory J. Trask
Kevin P. Jacobs
1441 Brickell Ave.
Miami, FL 33131
(305) 350-5100

*Counsel for Plaintiffs-Appellants*

November 6, 2023

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

## CERTIFICATE OF INTERESTED PERSONS (AS AMENDED)[*]

The undersigned counsel for Appellants, pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, hereby certifies that the following is a complete list of persons and entities having an interest in the outcome of this case:

Adar Capital Partners Ltd.;

Adar Macro Fund Ltd.;

Ashmore Emerging Markets Debt and Currency Fund Limited;

Ashmore Emerging Markets High Yield Plus Fund Limited;

Ashmore Emerging Markets Tri Asset Fund Limited;

Ashmore Investment Advisors Limited;

Ashmore Investment Management Limited;

Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Corporate Debt Fund;

Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Debt Fund;

Ashmore SICAV in respect of Ashmore SICAV Emerging Markets High Yield Corporate Debt Fund;

Baltic Offshore Marine Contractors AB;

---

[*] Goliath Offshore Holdings Pte. Ltd. has been added.

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Banco Nacional de México S.A.;

Caballo Marango S.A.;

Citibank, N.A.;

Citigroup Inc. (publicly traded on the New York Stock Exchange under the
symbol "C");

Coastline Group Incorporated;

Coastline Maritime Pte. Ltd.;

Cooper, David M. (Quinn Emanuel Urquhart & Sullivan, LLP);

Coöperatieve Rabobank U.A.;

Copernico Capital Partners (Bermuda) Ltd.;

Day Pitney LLP;

Dickie, Lauren H. (Quinn Emanuel Urquhart & Sullivan, LLP);

Ferguson, Laura N. (Quinn Emanuel Urquhart & Sullivan, LLP);

Fishbein, Stephen (Shearman & Sterling LLP);

Garcia-Linares, Manuel A. (Day Pitney LLP);

Gayles, Darrin P. (United States District Judge for the Southern District of
Florida);

Goliath Offshore Holdings Pte. Ltd.;

Grupo Financiero Banamex S.A. de C.V.;

Grupo Máquinas Diesel, S.A. de C.V.;

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Gulf Investments and Services Ltd.;

Hakki, Adam S. (Shearman & Sterling LLP);

Halani International Ltd.;

HBK Investments L.P.;

HBK Master Fund L.P.;

Homer Bonner Jacobs Ortiz, P.A.;

Homer, Peter W. (Homer Bonner Jacobs Ortiz, P.A.);

ICE 1: EM CLO Limited;

ICE Canyon LLC;

Jacobs, Kevin P. (Homer Bonner Jacobs Ortiz, P.A.);

Lewis, Daniel C. (Shearman & Sterling LLP);

Máquinas Diesel S.A. de C.V.;

Marfield Ltd. Inc.;

Mitchell, Michael P. (Shearman & Sterling LLP);

Moneda Asset Management S.A.;

Moneda Deuda Latinoamericana Fondo de Inversión (publicly traded on the
        Santiago Stock Exchange under the symbol "CFIIMDLAT");

Moneda Latin American Corporate Debt;

Moneda Renta CLP Fondo de Inversión (publicly traded on the Santiago
        Stock Exchange under the symbol "CFIMRCLP");

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Moneda S.A. Administradora General de Fondos;

Morillo, Juan P. (Quinn Emanuel Urquhart & Sullivan, LLP);

Nathanson, John (Shearman & Sterling LLP);

Needham, David H. (Quinn Emanuel Urquhart & Sullivan, LLP);

Nordic Trustee AS;

Nordic Trustee Holding AS;

O'Sullivan, John F. (Quinn Emanuel Urquhart & Sullivan, LLP);

Oceanografía S.A. de C.V.;

OSA Goliath Pte. Ltd.;

Otazo-Reyes, Alicia M. (United States Magistrate Judge for the Southern
    District of Florida);

Otto Candies, LLC;

Padstow Financial Corp.;

Pareto Securities AS;

Pareto Securities Pte. Ltd.;

Patria Finance Limited (formerly known as Moneda International Inc.);

Quinn Emanuel Urquhart & Sullivan, LLP;

Scheepswerf De Hoop B.V. (formerly known as Hoop Lobith International
    B.V.);

Shaffer, Derek L. (Quinn Emanuel Urquhart & Sullivan, LLP);

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Shanara Maritime International S.A.;

Shearman & Sterling LLP;

Shipyard De Hoop B.V.;

Soledad, Gabriel F. (Quinn Emanuel Urquhart & Sullivan, LLP);

Stichting Administratiekantoor Shipyard De Hoop B.V.;

Thompson, Georgia A. (Day Pitney LLP);

Trask, Gregory J. (Homer Bonner Jacobs Ortiz, P.A.);

Waypoint Absolute Return Fund LLC;

Waypoint Asset Management LLC; and

Wit, Terry L. (Quinn Emanuel Urquhart & Sullivan, LLP).

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

## CORPORATE DISCLOSURE STATEMENT (AS AMENDED)[*]

Appellants, pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3, provide the following nongovernmental corporate party disclosure statement.

Appellant Adar Macro Fund Ltd. has no parent corporation. No publicly-traded corporation owns 10% or more of Appellant Adar Macro Fund Ltd.

Appellant Ashmore Emerging Markets Debt and Currency Fund Limited, Appellant Ashmore Emerging Markets High Yield Plus Fund Limited, Appellant Ashmore Emerging Markets Tri Asset Fund Limited, Appellant Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Corporate Debt Fund, Appellant Ashmore SICAV in respect of Ashmore SICAV Emerging Markets Debt Fund, and Appellant Ashmore SICAV in respect of Ashmore SICAV Emerging Markets High Yield Corporate Debt Fund (collectively, the "Ashmore Funds and Accounts Appellants"), state that none of the Ashmore Funds and Accounts Appellants have a parent corporation. No publicly-traded corporation owns 10% or more of any of the Ashmore Funds and Accounts Appellants.

---

[*] Appellants Moneda Deuda Latinoamericana Fondo de Inversión and Moneda Latin American Corporate Debt have been updated with publicly-traded corporations that own 10% or more of them.

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Appellant Coastline Maritime Pte. Ltd. is a subsidiary of Coastline Group Incorporated, which is incorporated in Panama.  No publicly-traded corporation owns 10% or more of Appellant Coastline Maritime Pte. Ltd.

Appellant Coöperatieve Rabobank U.A. has no parent corporation.  No publicly-traded corporation owns 10% or more of Appellant Coöperatieve Rabobank U.A.

Appellant Copernico Capital Partners (Bermuda) Ltd. has no parent corporation.  No publicly-traded corporation owns 10% or more of Appellant Copernico Capital Partners (Bermuda) Ltd.

Appellant Gulf Investments and Services Ltd. has no parent corporation.  No publicly-traded corporation owns 10% or more of Appellant Gulf Investments and Services Ltd.

Appellant Halani International Ltd. has no parent corporation.  No publicly-traded corporation owns 10% or more of Appellant Halani International Ltd.

Appellant HBK Investments L.P. and Appellant HBK Master Fund L.P. (together, the "HBK Appellants") have no parent corporation.  No publicly-traded corporation owns 10% or more of either of the HBK Appellants.

Appellant Hoop Lobith International B.V. (now known as Scheepswerf de Hoop B.V.) is a subsidiary of Appellant Shipyard De Hoop B.V., which is a subsidiary of Stichting Administratiekantoor Shipyard De Hoop B.V., which is

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

registered in the Netherlands.  No publicly-traded corporation owns 10% or more of Appellant Hoop Lobith International B.V. (now known as Scheepswerf de Hoop B.V.).

Appellant ICE 1: EM CLO Limited and Appellant ICE Canyon LLC (together, the "ICE Canyon Appellants") have no parent corporation.  No publicly-traded corporation owns 10% or more of either of the ICE Canyon Appellants.

Appellant Máquinas Diesel S.A. de C.V. is a subsidiary of Grupo Máquinas Diesel, S.A. de C.V., which is registered in Mexico.  No publicly-traded corporation owns 10% or more of Appellant Máquinas Diesel S.A. de C.V.

Appellant Marfield Ltd. Inc. is a subsidiary of Coastline Group Incorporated, which is incorporated in Panama.  No publicly-traded corporation owns 10% or more of Appellant Marfield Ltd. Inc.

Appellant Moneda Deuda Latinoamericana Fondo de Inversión (publicly traded on the Santiago Stock Exchange under the symbol "CFIIMDLAT") has no parent corporation.  AFP Habitat S.A. (publicly traded on the Santiago Stock Exchange under the symbol "HABITAT") owns more than 10% of Appellant Moneda Deuda Latinoamericana Fondo de Inversión.

Appellant Moneda International Inc. (now known as Patria Finance Limited) is part of the same corporate group as Moneda Asset Management S.A., which is

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

registered in Chile. No publicly-traded corporation owns 10% or more of Appellant Moneda International Inc. (now known as Patria Finance Limited).

Appellant Moneda Latin American Corporate Debt has no parent corporation. Menora Mivtachim Holdings Ltd. (publicly traded on the Tel Aviv Stock Exchange under the symbol "MMHD") and Migdal Insurance & Financial Holdings Ltd. (publicly traded on the Tel Aviv Stock Exchange under the symbol "MGDL") each own more than 10% of Appellant Moneda Latin American Corporate Debt.

Appellant Moneda Renta CLP Fondo de Inversión (publicly traded on the Santiago Stock Exchange under the symbol "CFIMRCLP") has no parent corporation. No publicly-traded corporation owns 10% or more of Appellant Moneda Renta CLP Fondo de Inversión.

Appellant Moneda S.A. Administradora General de Fondos is a subsidiary of Moneda Asset Management S.A., which is registered in Chile. No publicly-traded corporation owns 10% or more of Appellant Moneda S.A. Administradora General de Fondos.

Appellant Nordic Trustee AS is a wholly-owned subsidiary of Nordic Trustee Holding AS, which is incorporated in Norway. No publicly-traded corporation owns 10% or more of Appellant Nordic Trustee AS.

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

Appellant Otto Candies, LLC has no parent corporation. No publicly-traded corporation owns 10% or more of Appellant Otto Candies, LLC.

Appellant Padstow Financial Corp. has no parent corporation. No publicly-traded corporation owns 10% or more of Appellant Padstow Financial Corp.

Appellant Shanara Maritime International S.A. is a subsidiary of Caballo Marango S.A. (registered in Panama), which is a subsidiary of Coastline Group Incorporated. No publicly-traded corporation owns 10% or more of Appellant Shanara Maritime International S.A.

Appellant Shipyard De Hoop B.V. is a subsidiary of Stichting Administratiekantoor Shipyard De Hoop B.V., which is registered in the Netherlands. No publicly-traded corporation owns 10% or more of Appellant Shipyard De Hoop B.V.

Appellant Waypoint Asset Management LLC has no parent corporation. No publicly-traded corporation owns 10% or more of Appellant Waypoint Asset Management LLC.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs respectfully submit that oral argument would assist the Court in deciding this appeal.  This case presents an important question regarding the standard for pleading scienter for common law claims.  This case also concerns detailed allegations of fraudulent conduct that the district court did not address, and oral argument would be beneficial in providing counsel and the Court with the opportunity to address whether these allegations meet the applicable pleading standards.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

STATEMENT OF JURISDICTION ..................................................... 3

STATEMENT OF THE ISSUES .......................................................... 4

STATEMENT OF THE CASE............................................................. 5

      A.    Background ...................................................................... 5

           1.    The Cash-Advance Fraud ........................................ 5

           2.    Citigroup's Involvement In The Fraud .................... 6

           3.    Plaintiffs' Losses From The Fraud .......................... 10

      B.    Proceedings Below............................................................ 12

      C.    Standard Of Review ......................................................... 15

SUMMARY OF ARGUMENT .............................................................. 15

ARGUMENT ....................................................................................... 18

I.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY
    DISMISSING PLAINTIFFS' CLAIMS FOR AIDING AND
    ABETTING FRAUD BASED ON DRAWING INFERENCES
    AGAINST CITIGROUP'S KNOWLEDGE ................................... 18

      A.    The District Court Erred In Applying The Strong Inference Of
           Scienter Test ..................................................................... 20

      B.    The TAC Contains Detailed Allegations Establishing
           Citigroup's Knowledge Of The Fraud ................................ 24

II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY
    DISMISSING PLAINTIFFS' OTHER CLAIMS BASED ON
    SUPPOSED LACK OF ALLEGATIONS OF
    MISREPRESENTATIONS, RELIANCE, AND AGREEMENT ............. 32

    A.    The TAC Alleges Misrepresentations And Omissions With Particularity For Each Plaintiff .............................................................33

    B.    The TAC Alleges Reliance With Particularity For Each Plaintiff.................................................................................................41

    C.    The TAC Alleges Citigroup's Agreement To The Conspiracy ..........45

III.    THIS COURT SHOULD ORDER THAT THE CASE BE REASSIGNED TO A NEW DISTRICT COURT JUDGE ON REMAND ...........................................................................................48

CONCLUSION ..........................................................................................51

## TABLE OF CITATIONS

**Page**

### Cases

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ..........................................................46

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................21

*Ashland, Inc. v. Oppenheimer & Co.*,
  648 F.3d 461 (6th Cir. 2011) .......................................................22, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................36

*Bolinger v. First Multiple Listing Serv., Inc.*,
  838 F. Supp. 2d 1340 (N.D. Ga. 2012)...............................................43

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ..........................................................36

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) .....................................................25, 30

*Charles v. Fla. Foreclosure Placement Ctr., LLC*,
  988 So. 2d 1157 (Fla. 3d DCA 2008).................................................47

*Chudasama v. Mazda Motor Corp.*,
  123 F.3d 1353 (11th Cir. 1997) ..........................................................49

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
  561 F. App'x 882 (11th Cir. 2014)......................................................47

*Fernau v. Enchante Beauty Products, Inc.*,
  847 F. App'x 612 (11th Cir. 2021)......................................................44

*First Fla. Bank, N.A. v. Max Mitchell & Co.*,
  558 So. 2d 9 (Fla. 1990) .....................................................................39

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*,
  565 F.3d 200 (5th Cir. 2009) ..............................................................22

*Freeman v. JPMorgan Chase Bank, N.A.*,
　　675 F. App'x 926 (11th Cir. 2017) ....................................................24

*Gilison v. Flagler Bank*,
　　303 So. 3d 999 (Fla. 4th DCA 2020) ....................................19, 24, 29

*Global Network Mgmt. Ltd. v. Centurylink Latin Am. Solutions, LLC*,
　　67 F.4th 1312 (11th Cir. 2023) ....................................................15, 26

*Gov't Emps. Ins. v. Mas*,
　　2020 WL 9604436 (S.D. Fla. Mar. 31, 2020) ...................................41

*Gutter v. Wunker*,
　　631 So. 2d 1117 (Fla. 4th DCA 1994) ..........................................38, 39

*HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*,
　　2001 WL 36186526 (S.D. Fla. Dec. 14, 2001) ..................................45

*Hecht v. Commerce Clearing House, Inc.*,
　　897 F.2d 21 (2d Cir. 1990) .............................................................47

*Humana, Inc. v. Castillo*,
　　728 So. 2d 261 (Fla. 2d DCA 1999) .................................................41

*Infinity Lab'y Grp. Inc. v. Odegard*,
　　2022 WL 17978274 (D. Del. Dec. 28, 2022), *R&R adopted*, 2023
　　WL 172236 (D. Del. Jan. 12, 2023) .................................................23

*Johnson v. Davis*,
　　480 So. 2d 625 (Fla. 1985) ............................................................38

*Jordan v. Scott Fetzer Co.*,
　　2007 WL 4287719 (M.D. Ga. Dec. 4, 2007) ....................................42

*Joseph v. Normal LaPorte Realty Inc.*,
　　508 So. 2d 496 (Fla. 4th DCA 1987) (per curiam) ............................39

*Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*,
　　2017 WL 11103938 (S.D. Fla. June 26, 2017) ................19, 24, 30, 39

*Kleiman v. Wright*,
　　2020 WL 5632654 (S.D. Fla. Sept. 21, 2020) ..................................39

*Knit With v. Knitting Fever, Inc.*,
 625 F. App'x 27 (3d Cir. 2015) ..........................................................47

*Koch v. Royal Wine Merchants, Ltd.*,
 907 F. Supp. 2d 1332 (S.D. Fla. 2012) ..............................................39

*Lamm v. State St. Bank & Tr. Co.*,
 889 F. Supp. 2d 1321 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th
 Cir. 2014) ......................................................................................20, 23

*In re Marsh & McLennan Cos. Sec. Litig.*,
 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................31

*Maverick Fund, L.D.C. v. Lender Processing Servs. Inc.*,
 2015 WL 5559761 (M.D. Fla. Sept. 21, 2015)...................................23

*Otto Candies, LLC v. Citigroup, Inc.*,
 963 F.3d 1331 (11th Cir. 2020) ...............................................1, 12, 49

*Panama v. BCCI Holdings (Luxembourg) S.A.*,
 119 F.3d 935 (11th Cir. 1997) ......................................................23, 46

*Prager v. FMS Bonds, Inc.*,
 2010 WL 2950065 (S.D. Fla. July 26, 2010) .....................................42

*Ramel v. Chasebrook Constr. Co.*,
 135 So. 2d 876 (Fla. 2d DCA 1961)...................................................39

*Rose v. Bartle*,
 871 F.2d 331 (3d Cir. 1989) ...............................................................47

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
 773 F. Supp. 342 (S.D. Fla. 1991).....................................................45

*SEC v. Alar*,
 2020 WL 10486745 (N.D. Ga. Sept. 21, 2020)..................................43

*Slayter v. DC 701, LLC*,
 2009 WL 223838 (M.D. Fla. Jan. 29, 2009) ......................................43

*Solomon v. Blue Cross & Blue Shield Ass'n*,
 574 F. Supp. 2d 1288 (S.D. Fla. 2008)...............................................36

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
    904 F.3d 1197 (11th Cir. 2018) ..........................................................21

*In re Sunbeam Sec. Litig.*,
    89 F. Supp. 2d 1326 (S.D. Fla. 1999) ................................................40

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................31

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
    287 F. App'x 81 (11th Cir. 2008) ........................................21, 26, 30

*Watts v. Fla. Int'l Univ.*,
    495 F.3d 1289 (11th Cir. 2007) ..........................................................42

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ....................................................37, 38

*Wilding v. DNC Services Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ..........................................................43

*Williamson v. Travelport, LP*,
    953 F.3d 1278 (11th Cir. 2020) ..........................................................37

*Woods v. On Baldwin Pond, LLC*,
    634 F. App'x 296 (11th Cir. 2015) .....................................................38

*ZC Ins. v. Brooks*,
    847 So. 2d 547 (Fla. 4th DCA 2003) ..................................................39

## Statutes

15 U.S.C. § 78u-4(b)(2) ...........................................................................22

28 U.S.C. § 1291 ........................................................................................3

28 U.S.C. § 1331 ........................................................................................3

28 U.S.C. § 1367 ........................................................................................3

## Rules and Regulations

Fed. R. Civ. P. 8(a) ........................................................................2, 21, 47

Fed. R. Civ. P. 9(b) ............................................2, 15, 20, 21, 23, 24, 27, 34, 47

## **Other Authorities**

5A C. Wright & A. Miller, Federal Practice and Procedure § 1301 (3d
    ed. 2004) .................................................................................................21

Citi First Quarter 2014 Earnings Review,
    https://www.citigroup.com/rcs/citigpa/akpublic/storage/public/tr14
    0414a.pdf ..........................................................................................26, 28

*In re Citigroup Inc.*, Exchange Act Release No. 83858,
    2018 WL 3913653 (Aug. 16, 2018) ....................................................9

Restatement (Second) of Torts § 533 (1977)..........................................39

## INTRODUCTION

Plaintiffs brought suit against Citigroup for its role in a massive fraud involving Oceanografía S.A. de C.V. ("Oceanografía" or "OSA"), once the largest oil-services company in Latin America, which cost Plaintiffs over one billion dollars. The district court (Gayles, J.) previously dismissed the claims on *forum non conveniens* grounds, which this Court reversed. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331 (11th Cir. 2020). This Court held that the dismissal rested on an erroneous understanding of the law, "in tension with existing precedent," *id.* at 1340, and on accepting the "unsupported contention of Citigroup," rather than the allegations of the complaint and reasonable inferences therefrom, *id.* at 1348-51.

After more than a year, the district court scheduled a hearing on Citigroup's motion to dismiss on other grounds, at which the court insisted on more detailed fraud allegations for each Plaintiff individually. Plaintiffs amended their complaint to provide those details on a Plaintiff-by-Plaintiff basis, and the parties re-briefed the motion to dismiss. Yet another year after this briefing was complete, and without oral argument, the district court dismissed the claims again, without even mentioning the detailed allegations it had requested. Indeed, just as in the prior dismissal that this Court reversed, the district court adopted the wrong legal

1

standards and refused to accept—or, for the most part, even to consider—the well-pleaded allegations of the complaint.

Much of the district court's reasoning for its dismissal rests on an erroneous analysis of the scienter allegations. And given that OSA's underlying fraud is undisputed, the district court's dismissal of the claim for aiding and abetting fraud rests entirely on Citigroup's supposed lack of scienter. But the court erred as a matter of law in requiring Plaintiffs to plead a strong inference of scienter, which is the standard for claims under the Private Securities Litigation Reform Act ("PSLRA"), not for common law claims. Those claims are governed by Rule 8(a), which requires only that allegations be plausible, and Rule 9(b), which states that knowledge of fraud can be alleged generally. Here, the scienter allegations are not only plausible; they are overwhelming. Citigroup admitted that it terminated an employee it believed was directly and criminally involved with the fraud, and Mexican regulators also found Citigroup employees criminally responsible for their knowing participation in the fraud. The district court nonetheless rejected these and other allegations supporting scienter by reading all inferences against Plaintiffs, rather than against Citigroup, in conflict with well-established law.

The district court further erred in rejecting the allegations of misrepresentations and omissions, reliance, and conspiracy without considering the particularized allegations supporting those elements. The complaint contains

extremely detailed allegations describing the who, what, when, and where for the misrepresentations and omissions for each Plaintiff, and how each Plaintiff relied on those misrepresentations and omissions in its investment and business decisions with respect to OSA. The court did not discuss those allegations, instead just broadly and incorrectly describing them as conclusory. Indeed, for the vicarious liability claims, where Plaintiffs themselves did not question the allegations of misrepresentations and reliance, the court did not even mention the allegations incorporated into the relevant counts. Moreover, for the claims of conspiracy, the court erroneously applied a particularity standard for alleging an agreement that is inapplicable as a matter of law and again ignored the allegations directly on point.

Accordingly, this Court should reverse the district court's dismissal of Plaintiffs' claims. In addition, given the nature of the errors in this dismissal and in the prior, reversed dismissal, along with the extensive delays that have kept this case at the pleading stage for more than 7½ years, Plaintiffs respectfully request that a new district judge be assigned on remand.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331. Doc. 187 at 13 (¶ 52). The court had supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367. *Id.* (¶ 53). This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final

decision of the district court.  The district court entered final judgment on September 20, 2023.  Doc. 205.  On September 25, 2023, Plaintiffs timely filed their notice of appeal.  Doc. 206.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred as a matter of law by holding that (a) a strong inference of scienter is required to plead common law fraud claims, and (b) the allegations of scienter pled here do not suffice despite the defendant's own admission that it believed an employee it fired was directly involved in the fraud, foreign regulators' findings that the defendant had knowledge of the fraud, and obvious inconsistencies in financial documentation that the defendant knew could not be reconciled.

2.    Whether the district court erred as a matter of law in deeming allegations of misrepresentations, reliance, and agreement inadequate without actually addressing almost any of the detailed allegations on those elements.

3.    Whether this Court should order that the case be reassigned to a new district judge on remand given the district court's application of the wrong legal standards and disregard of the allegations of the complaint, both here and in a prior dismissal that this Court reversed.

## STATEMENT OF THE CASE

### A.    Background

#### 1.    The Cash-Advance Fraud

In 2008, Citigroup's Institutional Clients Group ("ICG"), a division of Citigroup based in the United States, established a cash-advance facility for OSA based on services OSA was to provide to Petróleos Mexicanos ("Pemex"), Mexico's state-owned oil and gas company.    Doc. 187 (Third Amended Complaint) at 1 (¶ 3), 17 (¶ 73).    Under the facility, Citigroup would advance payments allegedly due to OSA based on Pemex work orders, then collect those amounts directly from Pemex.    *Id.* at 1-2 (¶ 4), 20 (¶ 82).    Citigroup retained a hefty portion of these Pemex payments as interest for the cash advances.    *Id.* at 29 (¶ 115).    The more OSA requested in cash advances from the facility, the more money Citigroup made through interest payments.    *Id.* at 30 (¶ 118).

From 2008 to 2014, Citigroup advanced over $3 *billion* to OSA.    *Id.* at 17-18 (¶¶ 73-74).    In return, Citigroup collected tens of millions of dollars in interest every year.    *Id.* at 5 (¶ 12), 29 (¶ 113).    Taking advantage of the potential to increase its profits from the cash advance facility, Citigroup conspired with OSA to orchestrate a fraud whereby (1) OSA submitted false documentation in support of the cash advances to Citigroup; (2) Citigroup knowingly approved the false documentation; (3) OSA received funds to which it was not entitled; and (4) Citigroup earned interest on the illicit funds.    *Id.* at 2 (¶ 5), 27-38 (¶¶ 109-45).

5

To more easily execute and conceal the fraud, Citigroup wrongfully (1) increased its cash advances to OSA by nearly six times from 2009 to 2012 to nearly *half a billion* dollars, even though OSA's revenue increased by less than half that rate (*id.* at 30 (¶ 119)); (2) entered into a secret agreement with OSA whereby Citigroup gave OSA responsibility for validating its own documents (*id.* at 2 (¶ 6), 26-27 (¶¶ 105-07)); (3) violated Citigroup's own internal policies for approving OSA's requests, including by authorizing cash advances that exceeded the value of OSA's contract with Pemex by more than *$200 million* (*id.* at 36-37 (¶¶ 137-40)); and (4) misclassified the facility as essentially risk-free and subject to less scrutiny because Citigroup was repaid by Pemex, a government monopoly (*id.* at 30 (¶¶ 116-17)).

In early 2014, the Mexican government uncovered the cash-advance fraud after an unrelated audit revealed irregularities in OSA's contracts with Pemex. *Id.* at 6 (¶ 15), 41 (¶¶ 162-63). Shortly thereafter, the Mexican Attorney General's Office seized OSA and put the company into restructuring proceedings. *Id.* at 45 (¶ 177).

### 2.    Citigroup's Involvement In The Fraud

Citigroup—specifically, Citigroup's ICG, which is based in New York and Florida and led by senior Citigroup executives based in the United States— managed the cash-advance facility with OSA. *Id.* at 18-21 (¶¶ 76-83). Citigroup's

ICG is responsible for servicing high-net-worth clients like Pemex. *Id.* at 18 (¶ 76). Citigroup was responsible for establishing the general policies and procedures to regulate cash advances to Pemex contractors, such as OSA, including those governing increases in such cash advances. *Id.* at 21-22 (¶¶ 84-87).

Citigroup ICG employees also managed Citigroup's relationship with OSA, including its cash-advance facility and fraudulent cash-advance requests. *Id.* at 19-22 (¶¶ 80, 83, 87-88), 28 (¶¶ 110-11). For example, senior Citigroup ICG executives signed the contract that allowed OSA to receive cash advances by assigning Citigroup its collection rights under its contracts with Pemex. *Id.* at 26 (¶ 105). Moreover, the OSA-Citigroup Relationship Manager, the Cash Advance Product Manager, and the Pemex-Citigroup Relationship Manager were all employees of Citigroup ICG. *Id.* at 22 (¶ 88), 28 (¶ 110), 56 (¶ 233); *see also* Doc. 187-2. In addition, two Citigroup ICG employees were responsible for approving all increases in OSA's cash-advance limit, which occurred on no fewer than nine separate occasions. Doc. 187 at 22 (¶ 87), 25 (¶ 104). Citigroup also managed and supervised employees of Banamex, which had responsibilities relating to the facility and reported to the ICG. *Id.* at 1 (¶ 3), 19-20 (¶¶ 80-81), 39 (¶¶ 148-49).

Citigroup had an intimate relationship with OSA that extended well beyond the cash-advance facility. *Id.* at 6 (¶ 13). Citigroup or Citigroup subsidiaries

(1) managed trusts and restructured debt to pay Plaintiffs (including through OSA's cash advances under the credit facility); (2) served as trustee of OSA's 2008 bond issuance and as fiduciary of the trust in the 2013 bond issuance, both of which included Plaintiffs as purchasers; (3) drafted OSA management presentations for Plaintiffs with the Citigroup logo; and (4) advised OSA to obtain equity investments and acquire a publicly traded U.S. company and a $165-million-dollar vessel. *Id.* at 40-41 (¶¶ 154-61), 51-62 (¶¶ 208-55). These services frequently required Citigroup, including Citigroup ICG and Citigroup Global Markets, Inc., another U.S.-based subsidiary, to review or prepare presentations regarding OSA's finances, including its cash-advance facility. *Id.* at 54-61 (¶¶ 224-52). In addition, Citigroup held itself out as OSA's banker and provided OSA with additional multimillion dollar lines of credit. *Id.* at 52-53 (¶¶ 211, 223).

Following discovery of the fraud, Citigroup was forced to launch an internal investigation into its cash-advance facility with OSA. *Id.* at 42 (¶ 165). Citigroup's internal investigation report, issued in April 2014, acknowledged that Citigroup had issued approximately $430 million in fraudulent cash advances. *Id.* (¶ 166). Because the scope of Citigroup's internal review was temporally limited, and did not include all of the cash advances to OSA, the actual value of the fraudulent cash advances is likely even greater. *Id.* at 42-43 (¶¶ 166, 171). In April 2014, Citigroup's CEO, Michael Corbat, publicly acknowledged that, based

on the internal investigation, at least one of Citigroup's employees was directly involved in the fraudulent cash-advance scheme. *Id.* at 43-44 (¶ 172). A month later, Corbat announced that Citigroup had fired 12 employees, including "four Managing Directors" (two being "business heads in Mexico"), and expected to discipline more for their involvement in the fraud. *Id.*; *see also* Doc. 83-4.

The Mexican criminal and regulatory authorities likewise have concluded that Citigroup employees were criminally involved in the scheme. Doc. 187 at 2-3 (¶ 7). On April 29, 2014, the Mexican banking regulator reported that ten Citigroup employees had violated Mexican criminal law by providing cash advances to OSA based on forged documents. *Id.* at 44-45 (¶ 176). On May 12, 2014, the Mexican authorities obtained arrest warrants for three Citigroup employees relating to these violations. *Id.* at 45 (¶ 177).

U.S. authorities, including the Securities and Exchange Commission and the Department of Justice, have also investigated Citigroup's role in the fraud. *Id.* at 46-47 (¶¶ 183-87). On August 16, 2018, the SEC settled an investigation with an order directing Citigroup to pay a $4.75 million fine, specifically for failures in its controls and reporting. *See In re Citigroup Inc.*, Exchange Act Release No. 83858, 2018 WL 3913653, at *9 (Aug. 16, 2018).

### 3.    Plaintiffs' Losses From The Fraud

Plaintiffs are 30 vendors, creditors, and bondholders of OSA who lost more than one billion dollars as a result of transactions with, and investments in, that company.  Doc. 187 at 6-12 (¶¶ 16-47).  Four of these Plaintiffs, Otto Candies, LLC (a Louisiana-based vessel building and leasing company), HBK Investments L.P. (a U.S.-based investment firm), ICE Canyon LLC (a former California-based investment firm), and Waypoint Asset Management LLC (a Florida-based investment firm), are citizens of the United States.  *Id.* at 7 (¶ 20), 9-10 (¶¶ 31, 36), 12 (¶ 46).  Plaintiffs established or maintained their relationship with OSA as a result of the cash-advance fraud, which allowed OSA to inflate its books and appear to be financially stable.  *Id.* at 6-7 (¶ 18).

In particular, Plaintiffs relied on fraudulent misrepresentations and omissions that Citigroup and/or OSA made to each of the Plaintiffs regarding OSA's finances.  *Id.* at 3-5 (¶¶ 8-11), 89-459 (¶¶ 378-1708).  Citigroup and/or OSA made these misrepresentations and omissions to Plaintiffs, either verbally or in writing, including through in-person meetings, telephone calls, e-mails, and written materials, such as presentations and financial statements.  *Id.*

For instance, from approximately 2001 to 2014, Plaintiff Otto Candies leased OSA a total of 21 vessels, which were used to provide services to Pemex. *Id.* at 316 (¶ 1179).  In 2012, OSA and Otto Candies entered into an agreement to

restructure OSA's debt to Otto Candies. *Id.* at 330-31 (¶ 1227). As part of this agreement, if OSA failed to pay any required monthly installments, Citigroup was required to pay Otto Candies with funds otherwise due to OSA under the cash-advance facility. *Id.* at 341 (¶ 1269). Otto Candies agreed to participate in that restructuring arrangement in reliance on Citigroup's participation. *Id.* at 331-32 (¶¶ 1228-33). The restructuring negotiations were conducted through calls and e-mails in the United States, where Citigroup knowingly misrepresented OSA's financial attractiveness. *Id.* at 334-40 (¶¶ 1240-67). Otto Candies is seeking to recover unpaid debt of approximately $120 million, and the loss of use of its 21 vessels, worth hundreds of millions of dollars, which it has neither recovered nor been able to lease since OSA's collapse. *Id.* at 322 (¶ 1196). There are similarly detailed allegations for all Plaintiffs, which specify Citigroup's misrepresentations and highlight numerous meetings, calls, and e-mails in the United States that formed the basis for the fraud. *E.g.*, *id.* at 4-5 (¶ 11), 54-61 (¶¶ 224-52), 121-22 (¶¶ 488-93), 397-99 (¶¶ 1488-96), 452-55 (¶¶ 1688-1700); *see also* Doc. 194-1 at 3, 7-9.

The liquidation of OSA's assets in bankruptcy will not provide any recovery to Plaintiffs, as the assets are worth only $100 million, which is the same amount as Mexico's priority claim for unpaid taxes. Doc. 187 at 49-51 (¶¶ 194-207).

### B.    Proceedings Below

On February 26, 2016, Plaintiffs filed this lawsuit in the U.S. District Court for the Southern District of Florida.  Doc. 1.  Citigroup moved to dismiss, which the district court granted on the basis of *forum non conveniens*.  Doc. 139 at 14. Plaintiffs appealed that decision, and on July 1, 2020, this Court reversed and remanded the case.  *Otto Candies*, 963 F.3d 1331.  This Court held that the district court erred in refusing to give deference to U.S. plaintiffs' choice of forum, refusing to take account of the interests of the United States, and refusing to credit the allegations of the complaint, instead taking as true Citigroup's assertions regarding the locus and nature of the fraud.  *Id.* at 1345-46, 1351.  On remand, Citigroup chose to abandon its *forum non conveniens* argument.  Doc. 147 at 2.

Plaintiffs then filed a Second Amended Complaint, Doc. 150, which Citigroup moved to dismiss.  At the hearing on that motion, the district court stated that Plaintiffs did not sufficiently specify the "who, what, when and where" of Citigroup's alleged misrepresentations or omissions and how each Plaintiff relied on them.  Doc. 184 at 5-6, 19.  The court added that this was "not a class action" but "individual plaintiffs making individual claims, and they need to be specific as to each of those individual plaintiffs."  *Id.* at 48.  The court dismissed the Second Amended Complaint without prejudice and granted Plaintiffs leave to amend.  *Id.*

On February 25, 2022, Plaintiffs filed a Third Amended Complaint ("TAC"), which is the operative complaint here, alleging claims against Citigroup for fraud, aiding and abetting, and conspiring to commit fraud; violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and vicarious liability.  Doc. 187 at 459-538 (¶¶ 1709-1977).  The TAC addressed the district court's concerns with the prior complaint by describing specific misrepresentations and omissions to each Plaintiff through detailed headings and quoted language, and identifying who made them, the day they were made, their format (e.g., meeting, call, email), and how each Plaintiff relied on them.  *Id.* at 4-5 (¶ 11), 89-459 (¶¶ 378-1708).  The TAC also included a chart summarizing these details for each Plaintiff.  Doc. 187-4.

Citigroup moved to dismiss the TAC, and (without a hearing) the district court granted the motion.  Doc. 203 at 23.  For the fraud and RICO claims, the court characterized Plaintiffs' allegations of reliance as "vague and conclusory." *Id.* at 6.  The court suggested that Plaintiff HBK's reliance allegations went "much further" than those of other Plaintiffs, but that it provided "no details" about how its reliance was justifiable.  *Id.* at 7.

For the RICO conspiracy claim, the court concluded that Plaintiffs did not sufficiently plead an agreement to the overall objective of the conspiracy or two predicate acts.  *Id.* at 9, 12.  In particular, the court posited alternative explanations

13

for Citigroup CEO Michael Corbat's statement that Citigroup terminated an employee it believed was directly involved in the fraud, and found that the statement did not "clearly constitute" an admission by Citigroup that the employee was an active participant in the fraud. *Id.* at 11.

For the aiding and abetting fraud claim, the court required a "strong inference" of Citigroup's knowledge of the fraud and again found that Corbat's statement was not a sufficiently "clear" admission to allow the court to infer Citigroup's knowledge. *Id.* at 15. The court also deemed irrelevant Mexican regulators' conclusions that Citigroup employees were criminally responsible for the fraud. *Id.* The court further found that Citigroup did not substantially assist the fraud based on its supposed lack of scienter. *Id.* at 17.

For the conspiracy to commit fraud claim, the court used its finding on Citigroup's knowledge of the fraud to conclude that Plaintiffs could not sufficiently plead an agreement between Citigroup and OSA. *Id.* at 19. The court also stated that Plaintiffs failed to allege who at Citigroup made the agreement, when the agreement was made, or how Citigroup made the agreement. *Id.*

For the vicarious liability claims, the court recognized that Plaintiffs sufficiently alleged an agency relationship between Citigroup, Banamex, and Citibank. *Id.* at 21. But the court concluded that the allegations of the agents' misrepresentations and Plaintiffs' reliance thereon did not suffice, looking only at

the allegations describing these counts and not at the TAC paragraphs incorporated therein.  *Id.* at 22-23.

### C.    Standard Of Review

This Court "exercise[s] plenary review of the dismissal of a complaint for failure to state a claim.  In conducting this review, we accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party."  *Global Network Mgmt. Ltd. v. Centurylink Latin Am. Solutions, LLC*, 67 F.4th 1312, 1314 (11th Cir. 2023).

## SUMMARY OF ARGUMENT

**I.**  The district court's reasoning on scienter, which was the sole basis for its dismissal of Plaintiffs' claim for aiding and abetting fraud, is legally erroneous. The court held that Plaintiffs must allege a "strong inference" of scienter, but this pleading standard for securities fraud claims under the PSLRA is completely inapplicable to common law fraud claims.  As courts consistently recognize, those claims are governed by Rule 9(b), which states that knowledge may be alleged generally.  The district court provided no basis to expand the PSLRA's "strong inference" standard outside the scope that Congress specified, or to ignore the standards set forth in Rule 9(b).

Applying the correct standard (or even the strong-inference standard), the allegations of Citigroup's knowledge here more than suffice to state a claim.

Citigroup's CEO admitted to firing an employee for his direct involvement in the fraud. The district court stated that this admission was not perfectly "clear" and one "could infer that Citigroup may have terminated employees" for more innocent reasons, Doc. 203 at 15, but this gets the legal standard precisely backwards. The court should have construed plausible inferences in Plaintiffs' favor, not in Citigroup's favor. The court further erred in ignoring Mexican regulators' findings of Citigroup's knowing participation in the fraud, positing hypothetical differences in Mexican law that Citigroup did not raise and that are irrelevant to the question of knowledge. Indeed, Citigroup's admission and the Mexican regulators' findings are well-supported by the simple fact that Citigroup knew of OSA's wildly and obviously inconsistent financial documentation, which was the foundation for the fraud.

**II.** The district court's only bases for dismissal other than scienter—a supposed lack of allegations of misrepresentations and omissions, reliance, and agreement—also fail as a matter of law and the well-pleaded allegations of the TAC.

*First*, the TAC alleges in great detail the who, what, when, and where of the misrepresentations and omissions for each Plaintiff. The court did not mention, let alone analyze, virtually any of these allegations. And for the vicarious liability claims, the court only mentioned the allegations within the few paragraphs

16

describing those claims, ignoring the other TAC paragraphs incorporated therein, which this Court has recognized is a basis for reversal.  The district court suggested that the TAC was too long to find the relevant allegations, but there were separate sub-sections and summary charts describing the misrepresentations and omissions for each Plaintiff, which Plaintiffs provided in response to the court's own criticism of the lack of such detail in the Second Amended Complaint.  The court also suggested, without explanation, that the allegations could not rest on OSA's actions, while ignoring both the allegations based entirely on Citigroup's own misstatements and omissions and the precedent establishing that Citigroup's knowledge and dissemination of OSA's misstatements also suffice for liability.

*Second*, the TAC provides detailed allegations of how each Plaintiff relied on the misstatements and omissions to its detriment.  Once again, the court did not mention the relevant allegations.  Instead, the court cited only the summary paragraph at the end of the TAC.  But the rest of the Complaint details how each Plaintiff would not have invested, would have withdrawn its investment, or otherwise would not have done business with OSA but for the particular, identified misrepresentations and omissions.  These allegations suffice as a matter of law.

*Third*, the court further erred in rejecting the allegations of agreement for purposes of conspiracy.  The court held that Plaintiffs were required to identify exactly which individuals formed the agreement and when and how that occurred.

17

But as numerous courts have held, there is no requirement to plead agreement with particularity. Regardless, the allegations of agreement here, based on Citigroup's knowing participation in the fraud, are overwhelming.

**III.** If this Court reverses the decision below, this Court should order that a new district judge be assigned on remand. Plaintiffs recognize that reassignment is not common, but the circumstances in this instance justify that remedy. If this Court reverses here, that will be two reversals at the pleading stage, with the case still at that stage more than seven years after Plaintiffs first started this litigation. Moreover, the district court's errors here (as in the prior appeal) are pervasive, including its application of the wrong legal standards and its refusal to credit Plaintiffs' factual allegations. Accordingly, reassignment is warranted in the interests of justice.

## ARGUMENT

## I. THE DISTRICT COURT ERRED AS A MATTER OF LAW BY DISMISSING PLAINTIFFS' CLAIMS FOR AIDING AND ABETTING FRAUD BASED ON DRAWING INFERENCES AGAINST CITIGROUP'S KNOWLEDGE

The district court erred in dismissing Plaintiffs' claims for aiding and abetting fraud. The court recognized that "the parties do not dispute the existence of the underlying fraud," and "[t]hus, Plaintiffs' aiding and abetting claim turns on whether Citigroup had knowledge of the fraud and provided substantial assistance to the commission of the fraud." Doc. 203 at 13. Moreover, on the issue of

18

substantial assistance, the district court's decision also boils down the question of knowledge because the court's only objection to the allegations was that "Plaintiffs insufficiently plead or otherwise show that Citigroup had actual knowledge of the underlying fraud." *Id.* at 17. Indeed, the TAC contains extensive allegations of substantial assistance, including that Citigroup's approved hundreds of millions of dollars in fraudulent cash advances to OSA, increased OSA's credit line, and helped OSA refinance its debt and other obligations. *See, e.g.*, Doc. 187 at 30 (¶ 118), 35-41 (¶¶ 135-44, 148-61). The fraud could not have existed without Citigroup's assistance: these advances were critical to OSA's apparent financial attractiveness, the fraud, and Plaintiffs' damages. *Id.* at 40-41 (¶¶ 154-61). Under Florida law, such conduct—providing funds to enable the fraud—is substantial assistance. *See Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020); *Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 2017 WL 11103938, at *8 (S.D. Fla. June 26, 2017).[1]

---

[1] Citigroup also assisted the fraud by (1) making its own (and through its agents) false representations to Plaintiffs; (2) assisting OSA with the preparation of financial materials and presentations that OSA provided to Plaintiffs in support of OSA's misrepresentations and omissions; (3) enabling OSA to hold itself out as a reputable and trustworthy company to Plaintiffs; and (4) acting as trustee for OSA's 2008 bond issuance. Doc. 187 at 4-5 (¶ 11), 52 (¶¶ 212-16), 54-61 (¶¶ 224-52), 121-22 (¶¶ 488-92), 208-09 (¶¶ 796-800), 249-50 (¶¶ 937-42), 334-45 (¶¶ 1240-88), 397-98 (¶¶ 1488-95), 428-29 (¶¶ 1601-05), 452-55 (¶¶ 1688-99); *see also* Docs. 194-1, 194-2, 194-3.

19

Accordingly, for the aiding and abetting claim, the only question at issue in this appeal is whether the TAC adequately alleged Citigroup's knowledge of the fraud. As discussed below, the district court's rejection of Plaintiffs' allegations of knowledge rests on application of the wrong legal standard and improperly reading inferences in favor of Citigroup, while ignoring many allegations altogether.

### A. The District Court Erred In Applying The Strong Inference Of Scienter Test

A strong inference of scienter is not required to bring a claim for aiding and abetting fraud, and the district court's application of that heightened standard is legal error. In a single sentence, without further explanation, the district court ruled that Plaintiffs must show a strong inference of scienter. *See* Doc. 203 at 14 (citing *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014)).

However, there was no legal basis to apply the strong-inference standard to a common-law claim. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. *Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally*." Fed. R. Civ. P. 9(b) (emphasis added). Thus, for Plaintiffs' claim for aiding and abetting fraud, knowledge "may be alleged generally."

Supreme Court precedent and this Court's precedent establish that the Rule 9(b) standard for pleading scienter does not permit a higher standard than the usual

pleading standard of plausibility.  The Supreme Court has held that "Rule 9 …
excuses a party from pleading discriminatory intent under an elevated pleading
standard."  *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  As *Iqbal* explained, "a
rigid rule requiring the detailed pleading of a condition of mind would be
undesirable," and "the general 'short and plain statement of the claim' mandate in
Rule 8(a) ... should control the second sentence of Rule 9(b)."  *Id.* at 687 (quoting
5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed.
2004)).  The Rule 8(a) standard, in turn, requires only "plausibility."  *Id.* at 678.
This Court likewise has recognized that Rule 9(b) does not permit a heightened
pleading standard for scienter.  For instance, when addressing claims outside the
PSLRA context, this Court held:  "Contrary to the district court's conclusion, Sun
Life need not have pled Imperial's knowledge of the relevant contracts with
specificity, even assuming Rule 9(b) applies."  *Sun Life Assurance Co. of Can. v.
Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215-16 (11th Cir. 2018); *see also
W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81,
88 (11th Cir. 2008) ("Rule 9(b) permits states of mind, including knowledge, to be
pled generally.").  The district court's imposition of a "strong inference"
requirement constitutes a heightened pleading standard that contradicts the plain
language of Rule 9(b), the Supreme Court's interpretation of that language in
*Iqbal*, and this Court's precedents.

The requirement of a strong inference of scienter comes from the PSLRA and has no application here.  The PSLRA states:  "[I]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The private actions "arising under this chapter" concern federal claims for securities fraud.  Plaintiffs' common law claims, including for aiding and abetting fraud, plainly do not arise under the PSLRA.  Thus, the PSLRA's "strong inference" requirement does not apply to these claims.

Courts have consistently recognized that the PSLRA's "strong inference" requirement does not apply to any claims outside the ambit of the PSLRA, including common law fraud claims.  For instance, the Fifth Circuit has held that "common law fraud claims are not subject to the heightened 'strong inference' of scienter standard imposed by the PSLRA."  *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009).  The Sixth Circuit has held the same:  "We recognize … that its common-law fraud claim need not meet the PSLRA's heightened pleading requirements."  *Ashland, Inc. v.*

*Oppenheimer & Co.*, 648 F.3d 461, 471 (6th Cir. 2011).[2]  The one district court case that the court below cited provided no explanation for its application of a strong-inference test outside the PSLRA context.  *See Lamm*, 889 F. Supp. 2d at 1332.[3]  Another district court case in this circuit, which did examine the issue, correctly held that the plaintiff "is not required to plead a 'strong inference' of scienter in its common law fraud claim."  *Maverick Fund, L.D.C. v. Lender Processing Servs. Inc.*, 2015 WL 5559761, at *14 (M.D. Fla. Sept. 21, 2015).  In any event, Congress adopted the strong-inference test in the PSLRA, but did so

---

[2] *See also, e.g.*, *Infinity Lab'y Grp. Inc. v. Odegard*, 2022 WL 17978274, at *4 (D. Del. Dec. 28, 2022) ("Defendants contend that Plaintiff's Delaware common law fraud claim must comply with the 'strong inference' standard …. Defendants are incorrect. … Defendants have cited no case in which the Third Circuit (or even any court in this district) has applied the PSLRA pleading requirements to a state law common law fraud claim.  The PSLRA, by its terms, applies to federal securities fraud suits."), *R&R adopted*, 2023 WL 172236 (D. Del. Jan. 12, 2023).

[3] In affirming *Lamm*, this Court did not address whether a strong inference was required, instead holding that the knowledge allegations did not suffice because they were "conclusory" and "at most show that [the defendant] 'should have known'" of the fraud.  749 F.3d at 950.  In its reply in support of the motion to dismiss, Citigroup also cited *Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935 (11th Cir. 1997), but that case likewise did not discuss, let alone attempt to resolve, this issue.  In *Panama*, this Court held that "plaintiff's allegations of scienter cannot be merely conclusory and unsupported by any factual allegations." *Id.* at 949 (quotation marks omitted).  That is far from the case here.  And while this Court also noted that "Panama's factual allegations do not give rise to a strong inference," *id.* (cleaned up), that single sentence did not purport to set a legal standard that would conflict with the prior paragraph's explanation that non-conclusory allegations suffice or with Rule 9(b), which this Court did not mention in *Panama*.

23

*only* for securities fraud claims, *not* for all claims of fraud. The extension of the strong-inference test to common law fraud claims thus would be contrary to Congress's clear limitation in the PSLRA, the plain language of Rule 9(b), the Supreme Court's holding in *Iqbal* that heightened pleading standards do not apply, and this Court's holding in *Sun Life* that knowledge need not be alleged with specificity.

### B. The TAC Contains Detailed Allegations Establishing Citigroup's Knowledge Of The Fraud

Under the correct test for pleading scienter, or even under the strong-inference test, the TAC's allegations more than suffice to allege Citigroup's knowledge of the fraud. Under Florida law, "a defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Gilison*, 303 So. 3d at 1003; *see also Kipnis*, 2017 WL 11103938, at *8. Here, the allegations establish far more than Citigroup's awareness, but rather its knowledge of and active participation in the fraud.

*First*, Citigroup's CEO's own admissions fully support the allegations of scienter. In particular, Citigroup "fired one of its employees because he was 'criminally involved' in the fraudulent scheme." Doc. 187 at 43 (¶ 172). Such "crimina[l] involve[ment]" in the fraud obviously would require knowledge of the fraud. *See Freeman v. JPMorgan Chase Bank, N.A.*, 675 F. App'x 926, 933-34 (11th Cir. 2017) ("If [the bank VP] was assisting [a third party] in his fraudulent

scheme, it follows that she knew [that party] was misappropriating money"). The knowledge of an employee acting on behalf of a corporation is imputed to the corporation, as a corporation only acts through its employees. *See, e.g.*, *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095-96 (11th Cir. 2017).

The district court erred in refusing to credit this allegation because Citigroup's CEO said Citigroup "terminated one employee 'who [it] **believe[d] was directly involved in the fraud**.'" Doc. 203 at 15 (emphasis in original; quoting Doc. 83-4). According to the district court, "[w]hile Plaintiffs point to this statement as an admission of fraud, it is not clear that it is so." *Id.* But a "clear" admission is not required to survive a motion to dismiss; there need only be a plausible allegation of knowledge (or at most a strong inference). The CEO's statement that Citigroup believed one of its employees "was directly involved in the fraud" satisfies that standard by any measure, even if there is some remote possibility that Citigroup's belief was mistaken.

Regardless, the admission could hardly have been clearer: a Citigroup employee's direct involvement in the fraud necessarily establishes knowledge of that fraud. Indeed, immediately before this statement, Citigroup's CEO stated: "I have committed to you that we would hold accountable anyone who perpetrated the crime." Doc. 83-4. Thus, the admission about the one employee is provided as an example of Citigroup holding a criminal perpetrator accountable. The district

25

court stated that the TAC's allegation of an admission of "criminal involvement" was misleading, *see* Doc. 203 at 11, 15, but this ignores the statement regarding "anyone who perpetrated the crime" and another Citigroup statement presented to the court saying that the employee was "criminally involved" in the fraud. *See* Citi First Quarter 2014 Earnings Review (Apr. 14, 2014), *available at* https://www.citigroup.com/rcs/citigpa/akpublic/storage/public/tr140414a.pdf ("Citi Earnings Review") (cited in Doc. 194 at 6 n.9). Thus, the district court's statement that Plaintiffs "misquote[d]" or were "misleading" about the record (Doc. 203 at 11 & n.7) was based on the court's looking only at one Citigroup statement and ignoring the other with the quotation at issue—all of which is a product of the court not simply accepting as true the TAC's factual allegations. In any event, the supposed difference between "criminal involvement" and "direct involvement" is immaterial here: either way, the employee knew about the fraud, and that knowledge is attributable to Citigroup.

The district court's attempt to read the CEO's statement in the light most favorable to Citigroup was both legally and factually erroneous. As a legal matter, it is well established that factual allegations must be accepted as true and construed in the light most favorable to the non-moving party. *Global Network Mgmt.*, 67 F.4th at 1314; *see also W. Coast Roofing*, 287 F. App'x at 88 ("While plaintiff provides only conclusory allegations that defendant made those statements

26

knowing they were false—less culpable explanations are certainly possible—Rule 9(b) permits states of mind, including knowledge, to be pled generally.").  Treating an admission that the defendant believes its own employee was directly involved in a fraud as somehow insufficient to allege the employee's knowledge of that fraud plainly does not construe the allegations in the light most favorable to Plaintiffs.

Indeed, the district court expressly applied the *opposite* presumption, reading any uncertainty in *Citigroup's* favor.  The court's ruling rested on the idea that "a reasonable person *could* infer that Citigroup *may* have terminated employees because of their failure to identify the presence of fraud by properly enforcing or applying the safeguards Citigroup had in place."  Doc. 203 at 15 (emphases added).  Thus, the court erroneously treated the mere possibility of an inference in Citigroup's favor as sufficient to reject the allegations.

Moreover, the district court's basis for finding this uncertainty is dubious. The district court noted that, according to the CEO, Citigroup "also said we would hold accountable any employee who enabled it, whether through lax supervision, circumvention of our controls, violations of our Code of Conduct, or otherwise." *Id.* at 11 (quoting Doc. 83-4).  But the statement that Citigroup would "also" punish those who were negligent does nothing to refute the knowledge of the terminated employee who had direct involvement in the fraud.  In any event, the firing of 11 additional employees "whose actions or inactions failed to protect our

company from this fraud," Doc. 83-4, only further supports scienter. It is more than reasonable to infer—given the Citigroup statement that those "criminally involved will be fired," *see* Citi Earnings Review, and the context of the fraudulent scheme discussed *infra* at 29-31—that those fired employees had knowledge of the fraud.

*Second*, the TAC alleges that Mexican government regulators found that Citigroup employees were criminally responsible for the fraud. *See supra* at 9. The district court's only response, which Citigroup did not raise, is that "Mexican law does not necessarily mirror the standard this Court must apply," and the court "must come to its own conclusion." Doc. 203 at 15. However, even if there is any difference between Mexican and U.S. law (and neither the court nor Citigroup pointed to any), that is irrelevant to the fact that Mexican government regulators found that Citigroup employees were criminally responsible for "extending loans they *know* recipients cannot repay," Doc. 187 at 45 (¶ 177), and that they "had uncovered evidence of criminal wrongdoing by Citigroup employees based on their *knowing* participation in the fraudulent scheme," *id.* at 46 (¶ 182). The question is not (as the district court suggests) whether the U.S. courts are bound by such a finding, but whether it is a relevant fact that supports allegations of knowledge at the pleading stage. And it is at least plausible that Citigroup

employees knew of the fraud when Mexican government regulators made such a finding.

*Third*, even beyond Citigroup's admissions and the Mexican regulators' findings, the TAC explains precisely why Citigroup must have been aware of the fraud. There was a clear inconsistency between the cash advances and the underlying contracts. *Id.* at 37 (¶ 140). As the TAC explains, Citigroup "provided cash advances to OSA in amounts that were, at a minimum, as much as five times more than the value of the underlying Pemex contract."[4] Citigroup knew about both the size of the cash advances and the size of the underlying contracts, which very obviously did not match. *Id.* at 28 (¶¶ 110-11), 39-40 (¶¶ 148-53), 44-45 (¶¶ 176-77 & nn.29, 31). Such knowledge suffices to allege fraud. *Gilison*, 303 So. 3d at 1003 (allegations that the bank had direct access to financial records and the discrepancies within them were sufficient to allege knowledge of the fraud because "the numbers did not add up"). Also, Citigroup had an intimate, multi-faceted relationship with OSA (Doc. 187 at 40-41 (¶¶ 154-61), 51-62 (¶¶ 208-55)), making it virtually certain—and, at a minimum, plausible—that Citigroup knew of

---

[4] For example, "OSA requested cash advances of (1) approximately $126 million on a contract that only paid $39 million annually; (2) approximately $110 million on a contract that only paid $23 million annually; (3) approximately $88 million on a contract that only paid $32 million annually; (4) approximately $44 million on a contract that only paid $16 million; and (5) approximately $75 million on a contract that only paid $51 million." Doc. 187 at 36 (¶ 137).

the fraud. *See, e.g.*, *Kipnis*, 2017 WL 11103938, at *8 (inferring knowledge where complaint alleged (1) defendants "act[ed] in concert" with fraudulent third parties; (2) a fraudulent party "spoke to Plaintiffs on Defendants' behalf"; and (3) defendants engaged in "telephone calls with [the fraudulent party] and worked with [him]" on related transactions (cleaned up)). These allegations of knowledge far exceed those that other courts routinely accept at the pleading stage. *See Chang*, 845 F.3d at 1097 (reversing dismissal where complaint lacked explicit allegations but "support[ed] an inference that [a bank VP] knew [of] misappropriati[on]"); *W. Coast Roofing*, 287 F. App'x at 88 (holding "only conclusory allegations that defendant made those statements knowing they were false" sufficient where the defendant's statement was clearly inconsistent with the facts as alleged).

The district court did not mention these allegations or the case law, and instead ruled that Plaintiffs were required "to allege *how* Citigroup knew the documents to be false or were otherwise forged, *when* such approvals occurred, *which* Citigroup employees approved the documents, etc." Doc. 203 at 14. The court cited nothing for this proposition, which defies the principle that knowledge can be alleged generally and far exceeds even the strong inference requirement. In any event, the district court ignored Plaintiffs' specific allegations regarding Citigroup employees Granja, Cervantes-Murillo, Ortega-Brehm, and Anorve, including their roles in approving cash advances that were blatantly inconsistent

30

with the value of the Pemex contracts and based on fraudulent documentation.  *See* Doc. 187 at 22 (¶¶ 87-88), 26-28 (¶¶ 105-07, 110), 35-36 (¶¶ 135-37), 44-45 (¶¶ 176-77 & nn.29, 31); *see also* Doc. 187-2.[5]

*Finally*, even if the strong-inference test applies, the TAC satisfies that test. The Supreme Court set forth three principles in applying the strong-inference test: (1) "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true"; (2) "[t]he inquiry … is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard"; and (3) "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,'" but only "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007) (emphasis in original).  Here, as discussed above, the court refused to acknowledge or credit the factual allegations.  It also stated only why certain individual

---

[5] In the court below, Citigroup disputed whether certain employees were Citigroup employees or Banamex employees, but Plaintiffs have alleged that these individuals were Citigroup employees.  Regardless, Banamex's knowledge can be imputed to Citigroup if it acted as Citigroup's agent.  *See, e.g.*, *See In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 482 (S.D.N.Y. 2006).  And, as discussed *infra* at 33, there is no dispute that the TAC sufficiently alleged that Banamex is Citigroup's agent.

allegations were insufficient (*e.g.*, Doc. 203 at 17 (stating that failure to follow internal procedures does not suffice)), rather than examining the allegations collectively.    Looking at the allegations as a whole—including Citigroup's conceded belief that one of its employees was directly involved in the fraud, Mexican regulators' conclusion that Citigroup knew of the fraud, and Citigroup's knowledge of the wildly inconsistent documents that constituted the fraud—it is extraordinarily likely (and certainly as compelling as the contrary conclusion) that Citigroup had knowledge of the fraud.

## II.    THE DISTRICT COURT ERRED AS A MATTER OF LAW BY DISMISSING PLAINTIFFS' OTHER CLAIMS BASED ON SUPPOSED LACK OF ALLEGATIONS OF MISREPRESENTATIONS, RELIANCE, AND AGREEMENT

The district court dismissed all of Plaintiffs' claims, other than aiding and abetting fraud, on related grounds.    In particular, the court dismissed the claims for violation of RICO and common law fraud (Counts I and III) based on lack of reliance, Doc. 203 at 7; the claim for conspiracy to violate RICO (Count II) based on lack of misrepresentations and knowing agreement to participate, *id.* at 9-12; the claim for conspiracy to commit fraud (Count V) based on lack of agreement, reliance, and knowledge, *id.* at 19; and the claims for vicarious liability (Counts VI and VII) based on lack of misrepresentations and reliance, *id.* at 22-23.    To the extent some of these rulings were based on supposed lack of knowledge, they are erroneous for the reasons explained *supra* Part I.    The only other bases for these

rulings are supposedly insufficient allegations of misrepresentations, reliance, and agreement. As discussed below, the district court failed to mention, let alone analyze, the allegations on these elements, which satisfy the relevant pleading standards.

### A. The TAC Alleges Misrepresentations And Omissions With Particularity For Each Plaintiff

As to the claim of conspiracy to violate RICO (Count II), the district court dismissed based in part on supposedly inadequate allegations of misrepresentations. Doc. 203 at 9. As to the claims of vicarious liability (Counts VI and VII), the district court dismissed based entirely on this ground. *Id.* at 20-23. In particular, the court recognized that "Citigroup does not dispute the existence of an actual or apparent agency relationship between Citigroup, as principal, and Banamex and Citibank, as its agents." *Id.* at 21. And the court (in addressing the aiding and abetting claims) recognized that "the parties do not dispute the existence of the underlying fraud." *Id.* at 13. Thus, the only question for the vicarious liability claims is whether there are particularized allegations of misrepresentations.[6]

---

[6] The court noted that Citigroup raised three arguments for dismissal of the vicarious liability claims: "(1) Plaintiffs fail to show that OSA acted in furtherance of Citigroup's interests; (2) they are time-barred; and (3) Plaintiffs should be judicially estopped from now asserting their vicarious liability claims." Doc. 203

The district court failed even to mention the allegations of misrepresentations, which the TAC describes in great detail. In fact, the allegations describe exactly the "who, what, when, and where" required by Rule 9(b) for each Plaintiff. *See* Doc. 187 at 4-5 (¶ 11), 89-459 (¶¶ 378-1708). The TAC further provided a chart summarizing the misrepresentations and omissions for each Plaintiff. *See* Doc. 187-4. In their opposition to Citigroup's motion to dismiss, Plaintiffs also provided charts (drawn from and with citations to the TAC) describing the date, location, source, and content of the misstatement or omission for each Plaintiff for each set of claims. *See* Docs. 194-1, 194-2, 194-3. To provide just a few examples:

- In an April 5, 2011 meeting between Plaintiff Gulf, OSA, and Citigroup, a Citigroup ICG senior executive vouched for OSA, including by informing Gulf that Banamex "support[ed] Oceanografía's finances" and "all Oceanografía payments were coming through them," which was false and misleading because Citigroup was not controlling and monitoring the cash advance facility. *See* Doc. 187 at 397-98 (¶¶ 1488-95).

- On May 13, 2011, at OSA's office in Mexico City, Candies met with Mr. Ortega-Rivera (Head of Citigroup Cash Advances), Emilio Granja (senior

---

at 21. The court rejected the first, *id.* at 21 n.15, and declined to address the other two, *id.* at 23.

ICG executive), and OSA representatives, and at that meeting, Citigroup represented that it was helping OSA to restructure the debt it owed Candies to pay off past-due lease payments, even though Citigroup knew of the fraud that would make this impossible. *Id.* at 326-27 (¶¶ 1210-15).

- In a September 26, 2012 telephone conference between Candies, OSA, and Citigroup, a Citigroup ICG senior executive stated that OSA's debt to Candies was "quite over collateralized," which was false and misleading given that OSA's liquidity and cash flow was dependent on a cash advance facility propped up by fraud. *Id.* at 338-40 (¶¶ 1258-64).

- In a July 15, 2013 email, Louis A. Piscitelli, Vice President of Citibank N.A., represented to Plaintiff Moneda that OSA's financial statements were "fine," in clear conflict with the reality of OSA's false financial projections, the false documents submitted by OSA to ICG employees, and the ongoing fraud. *Id.* at 249-50 (¶¶ 937-42).

- In a February 21, 2014 telephone conference, Citigroup told the 2008 Bondholders, including Plaintiffs Ashmore, GPF II, ICE Canyon, the Moneda Funds, and EIG that OSA was above-board with its financials, even though Citigroup *had already commenced* its internal investigation into the fraud and intended to terminate the cash advance facility, OSA's primary

35

and most important source of liquidity and cash flow, thereby threatening OSA's survival. *Id.* at 121-22 (¶¶ 488-92).

The district court did not address, let alone show any deficiency with, the details of any of the alleged misrepresentations. The district court stated that Plaintiffs "do not go beyond general allegations of fraudulent misrepresentations and material omissions," Doc. 203 at 12, but as shown by the examples above and the many others described in the TAC, these are far more than general allegations.[7] The district court also suggested that "Plaintiffs reference nearly 460 pages of allegations, leaving the Court to discern the relevant allegations of misrepresentations and omissions." *Id.* (footnote omitted). But this too is incorrect. The Complaint sets forth a separate section entitled "Citigroup's And OSA's Fraudulent Misrepresentations And Material Omissions Injured Plaintiff Bondholders," with individual sub-sections for each bondholder Plaintiff. *See*

---

[7] The cases the district court cited are readily distinguishable. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) ("The Amended Complaint is devoid of specific allegations with respect to the separate Defendants" and "fails to set forth the time, place, and manner in which any specific predicate act occurred."); *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1293 (S.D. Fla. 2008) ("The Complaint contains no date when an agreement took place. … The Complaint and RICO Case Statement contain no other allegations about who made the agreement, when the agreement was made, or how the Defendants made the agreement."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. … [A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Doc. 187 at 62-314 (Part XIV). The Complaint does the same for the remaining Plaintiffs. *See id.* at 314-459 (Parts XV-XVI). That is exactly what the court had requested in response to the Second Amended Complaint. *See supra* at 12. Given the length, Plaintiffs also provided the court with summary charts that identified the relevant misrepresentations for each Plaintiff. *See* Docs. 187-4, 194-1, 194-2, 194-3.

Moreover, for the vicarious liability counts, the district court cited *only* the allegations within the paragraphs at the end of the TAC describing the counts and found that those allegations were not specific enough. *See* Doc. 203 at 22 (citing Doc. 187 at 537 (¶¶ 1974, 1976)). However, Counts VI and VII expressly incorporated therein all of the prior allegations in the factual portion of the Complaint. *Id.* at 533 (¶ 1959) ("Plaintiffs repeat and re-allege paragraphs 60-1708 above as if fully set forth herein."); *id.* at 536 (¶ 1971) (same). The district court committed legal error in refusing to acknowledge the allegations stated previously in the Complaint and instead limiting its review only to the allegations listed under the vicarious liability counts. This Court has explained that while one count of a complaint may not incorporate other *counts*, it is permissible to incorporate prior factual allegations. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1324-25 (11th Cir. 2015); *Williamson v. Travelport, LP*, 953 F.3d 1278, 1299 (11th Cir. 2020). This Court accordingly has reversed district

courts for refusing to consider incorporated allegations. *See Weiland*, 792 F.3d at 1326; *Williamson*, 953 F.3d at 1300. It should do so here as well.

The district court's only substantive criticism of the allegations of misrepresentations and omissions is that "they rely heavily on the actions of OSA," and that Citigroup supposedly had no duty to disclose material omitted information or to correct OSA's misstatements. Doc. 203 at 12, 17. The TAC and the accompanying charts are very clear on when Plaintiffs are relying on omissions or statements of third parties for whom Citigroup is responsible. However, many of Plaintiffs' fraud allegations rest directly on misstatements by Citigroup. *See supra* at 34-36; *see also, e.g.*, Doc. 187 at 54-61 (¶¶ 224-52), 452-55 (¶¶ 1688-99). And others rest directly on misstatements by Banamex and Citibank, which (as the district court recognized) are undisputedly Citigroup's agents. *See, e.g.*, Doc. 187 at 208-09 (¶¶ 796-800), 428-29 (¶¶ 1601-05); Doc. 203 at 21. These alleged misstatements alone require denial of the motion to dismiss.

In any event, Citigroup is liable for its omissions and for misrepresentations by OSA. "Florida law does not recognize a stark distinction between fraud by commission and fraud by omission." *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 298 (11th Cir. 2015); *see also Johnson v. Davis*, 480 So. 2d 625, 628 (Fla. 1985). Thus, "where a party in an arm's length transaction undertakes to disclose information, all material facts must be disclosed." *Gutter v. Wunker*, 631

38

So. 2d 1117, 1118-19 (Fla. 4th DCA 1994); *see also ZC Ins. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003) (similar).  In addition, "nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact." *Kleiman v. Wright*, 2020 WL 5632654, at *34 (S.D. Fla. Sept. 21, 2020) (quoting *Ramel v. Chasebrook Constr. Co.*, 135 So. 2d 876, 882 (Fla. 2d DCA 1961)); *see also, e.g.*, *Kipnis*, 2017 WL 11103938, at *7 (one with "superior knowledge" must disclose).  Furthermore, under Florida law, "the maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other." *Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1344 (S.D. Fla. 2012) (quoting Restatement (Second) of Torts § 533 (1977)); *see also Joseph v. Normal LaPorte Realty Inc.*, 508 So. 2d 496, 497 (Fla. 4th DCA 1987) (per curiam).  "It is sufficient … that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name[.]" *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990).

Here, the TAC provides detailed allegations that Citigroup disclosed information to Plaintiffs—both directly and through other parties that Citigroup knew would make representations to Plaintiffs on Citigroup's behalf and with Citigroup's imprimatur. *See, e.g.*, Doc. 187 at 89-91 (¶¶ 379-83), 98-100 (¶¶ 413-16), 130-33 (¶¶ 520-24), 178-80 (¶¶ 694-98), 202-04 (¶¶ 775-79), 238-40 (¶¶ 902-06), 280-83 (¶¶ 1048-51), 298-301 (¶¶ 1114-19), 318-20 (¶¶ 1185-89), 353-55 (¶¶ 1327-31), 371-73 (¶¶ 1393-97), 394-96 (¶¶ 1477-81), 404-06 (¶¶ 1521-24), 420-22 (¶¶ 1576-80), 434-36 (¶¶ 1624-28); *see also* Doc. 194-1, 194-2, 194-3 (charts summarizing third-party misrepresentations to Plaintiffs for which Citigroup is liable).[8]  Once Citigroup made those disclosures and had those disclosures made in its name, and given its superior knowledge, Citigroup had a

---

[8] In particular, the TAC alleges that Citigroup assisted in the preparation of numerous documents (which the TAC defines as the Presentations, Pareto Materials, and 2008 Bond Memorandum), including by knowingly providing misleading information and omitting key facts; and knew that the Presentations, Pareto Materials, and 2008 Bond Memorandum would be distributed to and relied upon by current and potential investors in and business partners of OSA, including Plaintiffs. *See* Doc. 187 at 54-61 (¶¶ 224-52), 65-67 (¶¶ 273-79), 73-80 (¶¶ 307-39).  The TAC also alleges that Citigroup knew OSA's 2008 and 2013 bondholders would receive copies of OSA's financial statements, which it knew contained false and misleading information and omitted material facts, and Citigroup had a duty to speak when distributing the financial statements to the bondholders. *See, e.g.*, *id.* at 87-89 (¶¶ 372-77).   And, in many instances, Citibank sent OSA financial statements directly to Plaintiffs, despite knowing they were false. *See, e.g.*, *id.* at 208 (¶¶ 796-98), 249 (¶¶ 937-40).  The knowing dissemination of false statements is fraud under Florida law. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1345-46 (S.D. Fla. 1999).

duty to disclose material information (or correct misstatements to Plaintiffs by third parties, such as OSA, OSA's financial consultant, or Pareto, of which Citigroup was aware). *See, e.g.*, Doc. 187 at 91 (¶ 384), 100 (¶ 417), 133 (¶ 525), 180 (¶ 699), 204-05 (¶ 780), 241 (¶ 907), 283 (¶ 1052), 300-01 (¶ 1119), 320-21 (¶ 1190), 355 (¶ 1332), 373-74 (¶ 1398), 396 (¶ 1482), 406 (¶ 1525), 422-23 (¶ 1581), 439 (¶ 1639).

The district court did not address any of these arguments or this case law. The court held that there was no duty to disclose material omitted information only because Citigroup supposedly did not know of the fraud. Doc. 203 at 17. However, as explained *supra* Part I, this conclusion rests on legal errors and is inconsistent with the TAC's overwhelming allegations of scienter.

## B.    The TAC Alleges Reliance With Particularity For Each Plaintiff

The district court also erred—in dismissing the claims for violation of RICO and common law fraud (Counts I and III), conspiracy to commit fraud (Count V), and vicarious liability (Counts VI and VII)—in ruling that Plaintiffs did not sufficiently allege reliance on the misrepresentations and omissions. Under Florida law, reliance requires a plaintiff to show that "but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction." *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999). On a motion to dismiss, allegations of reliance are viewed in favor of the plaintiffs and will withstand a

motion to dismiss so long as they raise the claim "above the speculative level." *Jordan v. Scott Fetzer Co.*, 2007 WL 4287719, at *8 (M.D. Ga. Dec. 4, 2007) (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007)).

The TAC alleges in detail that each Plaintiff relied on particular misrepresentations or omissions when determining whether to invest in, continue investing in, or otherwise partnering and conducting business with OSA. *See, e.g.*, Doc. 187 at 97-98 (¶¶ 408-11), 128-30 (¶¶ 512-17), 142-43 (¶¶ 563-71), 200-02 (¶¶ 767-72), 235-37 (¶¶ 894-99), 276-78 (¶¶ 1031-35), 296-98 (¶¶ 1100-11), 313-14 (¶¶ 1167-71), 348-49 (¶¶ 1300-02), 366-68 (¶¶ 1372-78), 392-94 (¶¶ 1472-74), 402-03 (¶¶ 1508-14), 419-20 (¶¶ 1570-73), 431-32 (¶¶ 1612-15), 457-59 (¶¶ 1706-08). Plaintiffs included within the charts references to the reliance allegations for each Plaintiff, which state that their investment or business decisions would have been different but for specific, identified misrepresentations and omissions. Docs. 194-1, 194-2, 194-3.

Courts consistently recognize that such allegations of reliance suffice to state a claim. *See, e.g.*, *Gov't Emps. Ins. v. Mas*, 2020 WL 9604436, at *8 (S.D. Fla. Mar. 31, 2020) (allegations of reliance on "facially-valid" documents in taking detrimental action suffice for purposes of motion to dismiss); *Prager v. FMS Bonds, Inc.*, 2010 WL 2950065, at *4 (S.D. Fla. July 26, 2010) (holding reliance adequately alleged where complaint "asserts that 'based upon the representations,'

[defendant] 'induced' him to purchase the bonds"); *SEC v. Alar*, 2020 WL 10486745, at *3 (N.D. Ga. Sept. 21, 2020) (finding particularity satisfied where SEC alleged facts showing the content of the misstatements and how they misled investors); *see also Slayter v. DC 701, LLC*, 2009 WL 223838, at *2 (M.D. Fla. Jan. 29, 2009); *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1367 (N.D. Ga. 2012). Plaintiffs did not receive generic advertisements, but rather specific, targeted communications from Citigroup, OSA, and their agents (e.g., financial statements, bond offering materials, and presentations) and relied upon such communications. Because each misrepresentation or omission involved the concealment of the fraud, it is far more than plausible that but for each specific misrepresentation and omission, Plaintiffs would have known about the fraud and would not have purchased and/or retained their OSA bonds or done business with OSA.

The district court failed to discuss the TAC's specific allegations of reliance, instead mentioning only the summary paragraph at the end of the TAC. *See* Doc. 203 at 22 (citing Doc. 187 at 537 (¶ 1976)). As discussed *supra* at 37, this refusal to look at the allegations incorporated into the relevant counts is legally erroneous. The district court cites *Wilding v. DNC Services Corp.*, 941 F.3d 1116 (11th Cir. 2019), but there the plaintiffs "did not allege on which of the statements they relied." *Id.* at 1128. Here, the TAC specifies exactly the misstatements and

omissions upon which Plaintiffs relied.  The district court ruled that none of the Plaintiffs (except HBK) included that specificity, Doc. 203 at 6, but each Plaintiff's allegations are just as specific as HBK's reliance allegations.  *Compare* Doc. 187 at 201 (¶ 768) *with, e.g.*, *id.* at 89 (¶¶ 379-80), 331-32 (¶¶ 1228-33).  The court also relied on *Fernau v. Enchante Beauty Products, Inc.*, 847 F. App'x 612 (11th Cir. 2021), but there, the plaintiffs alleged only "that they would not have invested in Enchante if the defendants had made a 'full and accurate disclosure,'" without any link to the specific misstatements and omissions.  *Id.* at 622.  This Court instructed that the plaintiffs had to provide "information about which of the specifically alleged misrepresentations and omissions, if any, induced them to purchase shares in Enchante" or that "they would have invested if the defendants had disclosed the information in the enumerated omissions."  *Id.*  As discussed above, that is precisely what Plaintiffs alleged here.

Finally, the district court asserted that HBK "does not allege that its reliance was justifiable," Doc. 203 at 7, but Citigroup did not even challenge the allegations on this element in its motion to dismiss.  Regardless, Plaintiffs did allege that their reliance was justifiable, Doc. 187 at 513 (¶ 1861), and this allegation is more than plausible.  Plaintiffs had no practical ability to discover the fraud by ordinary observation, given that it evaded detection by financial regulators and numerous businesses affected by the fraud for years due to the falsification of documentation.

44

*See supra* at 9-10.  The district court cited nothing for the proposition that further detail regarding justifiable reliance is required at the pleading stage.  Indeed, the only cases the district court cited hold the opposite:  "[A]lthough neither [of the plaintiffs] explicitly plead 'reasonable' reliance, it is inferable from the allegations of the complaints read as a whole that plaintiffs could not have discovered the fraud despite any additional inquiries they may have made."  *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 353 (S.D. Fla. 1991); *see also HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, 2001 WL 36186526, at *13 (S.D. Fla. Dec. 14, 2001) ("The officer defendants have failed to provide any authority suggesting why 'the type of institutional investor' to whom the offering memorandum was addressed would be reckless in relying upon the offering memorandum. … Accordingly, the second amended complaint adequately pleads justifiable reliance.").

### C.    The TAC Alleges Citigroup's Agreement To The Conspiracy

The district court further erred in dismissing the claims for conspiracy to violate RICO (Count II) and conspiracy to commit fraud (Count V) based on a supposed lack of allegations regarding an agreement to the conspiracy.  Doc. 203 at 9-11, 19-20.  "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate

acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). The district court's rejection of the "predicate acts" prong was based on its rejection of the allegations of misrepresentations and omissions, which fails for the reasons stated *supra* Part II.A.  In addition, the TAC sufficiently alleges claims for conspiracy, for each Plaintiff, as to the agreement element.  *See* Doc. 187 at 96-97 (¶¶ 404-08), 126-28 (¶¶ 508-12), 141-43 (¶¶ 559-66), 198-201 (¶¶ 763-67), 234-37 (¶¶ 890-95), 275-78 (¶¶ 1027-31), 294-96 (¶¶ 1096-1104), 312-14 (¶¶ 1163-67), 346-49 (¶¶ 1296-1300), 365-67 (¶¶ 1368-72), 391-94 (¶¶ 1468-72), 401-02 (¶¶ 1504-08), 417-20 (¶¶ 1566-70), 430-32 (¶¶ 1608-12), 456-58 (¶¶ 1702-06); *see also* Doc. 194-3 (chart summarizing allegations supporting each Plaintiff's conspiracy claim).

For the claim of conspiracy to violate RICO, the district court concluded that the allegations of agreement were insufficient because the allegations of knowledge supposedly were insufficient.  *See* Doc. 203 at 11.  And in the case the district court cited, *id.* at 10, this Court affirmed dismissal based on lack of allegations of knowledge.  *See Panama*, 119 F.3d at 950.  Thus, for the same reasons explained *supra* Part I, this conclusion was erroneous.

For the claim of conspiracy to commit fraud, the court stated that "Plaintiffs fail to allege with particularity who made the agreement, when the agreement was made, or how Citigroup made the purported agreement with OSA."  Doc. 203 at

19. However, the court cited nothing for this supposed requirement. The Rule 9(b) particularity provision applies only to the "circumstances constituting fraud," Fed. R. Civ. P. 9(b), and the agreement is not a circumstance constituting fraud. That is why courts consistently recognize that the agreement for purposes of a conspiracy claim need *not* be alleged with particularity. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. Hecht's pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a)."); *Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 n.9 (3d Cir. 2015) (citing *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989)) (similar). Thus, the district court again applied the wrong legal standard.

Moreover, under Florida law, "[e]ach coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008)). Here, Citigroup's knowledge necessarily constitutes an agreement to participate in the fraud against Plaintiffs with OSA. *See Cordell*, 561 F. App'x at 886 ("There are specific allegations that the two litigation lawyers

47

advised the client to obtain the $7 million loan from plaintiff, knowing that the client would use a false financial statement. … These allegations are both sufficiently particularized and also sufficient to support reasonable inferences of agreement and an overt act.").  In any event, the TAC includes extensive and particularized allegations showing that Citigroup—and not just OSA, as the district court suggests without referencing any allegations, Doc. 203 at 20—was an active participant in the fraud.  *See supra* at 19, 34-36.  These allegations satisfy any conceivable pleading standard for showing an agreement.

## III.  THIS COURT SHOULD ORDER THAT THE CASE BE REASSIGNED TO A NEW DISTRICT COURT JUDGE ON REMAND

If this Court reverses the judgment in whole or in part, Plaintiffs respectfully request that this Court order that the case be assigned to a new district court judge. To be clear, Plaintiffs are not suggesting any bias on the part of Judge Gayles. And Plaintiffs recognize that reassignment is not a common remedy.  However, the circumstances here warrant reassignment in the interests of justice.

This Court has set forth the test to determine whether reassignment should be granted.  "Three factors inform our decision to reassign a case on remand: "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication

out of proportion to the gains realized from reassignment." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 (11th Cir. 1997).  All three factors support reassignment here.

*First*, the decisions from Judge Gayles suggest he may have difficulty putting aside his previous views in this case.  In the decision dismissing the case on *forum non conveniens* grounds, the district court made numerous errors in refusing to follow precedent and in uncritically accepting Citigroup's representations rather than the allegations of the Complaint.[9]  And here, as discussed above, the court applied the wrong legal standard for scienter with virtually no explanation, *see*

---

[9] *See Otto Candies*, 963 F.3d at 1339-40 (the district court reduced "the deference owed to the forum choice of domestic plaintiffs" by "adopt[ing] a foreign investment standard … in tension with existing precedent") (cleaned up); *id.* at 1345-46 ("it was inappropriate for the district court to discount or reduce the deference owed to the chosen forum of the American plaintiffs based on their decision to invest or transact business abroad"); *id.* at 1346 ("The district court also erred with respect to the foreign plaintiffs.  Even though they were entitled to 'somewhat' less deference than their domestic counterparts, that lesser degree of deference should not have removed Citigroup's burden entirely."); *id.* at 1350 ("the district court here stated—without further explanation—that it would be necessary for the plaintiffs to establish the 'underlying fraud' in Mexico.  It also accepted the contention of Citigroup that its defense would require documents in Mexico, even though Citigroup did not describe with any particularity the defense or the evidence necessary to establish it."); *id.* at 1351 ("The district court erred in concluding that the 'ease of access to evidence' factor supported dismissal.  That conclusion was based on unsupported findings …. The court also erred in concluding that the 'availability of witnesses and compulsory process' factor favors dismissal.  That conclusion was based on the unsupported contention of Citigroup …."); *id.* (the district court "failed to consider the sovereign interests of the United States").

*supra* Part I.A, refused to credit detailed factual allegations of scienter, *see supra* Part I.B, and ignored altogether the detailed factual allegations of misrepresentations, reliance, and agreement, including for claims where those allegations were uncontested, *see supra* Part II. In short, Judge Gayles' decisions suggest that it may be difficult for him to put aside his skepticism of Plaintiffs' allegations and instead to apply the proper legal standards to the facts as alleged (or, later in the case, as proven).

*Second*, reassignment would preserve the appearance of justice after two reversals at the pleading stage. The district court did not simply make one error on a difficult and contested issue. Rather, it made numerous errors that arise from applying the wrong legal standard and refusing to credit Plaintiffs' factual allegations. These errors suggest that reassignment would be appropriate.

*Third*, reassignment would not create waste or duplication and, in fact, likely would be more efficient than simply remanding to Judge Gayles. Because the case is still at the pleading stage, there would be little difficulty in getting a new district court judge up to speed on the litigation. Indeed, this case has been pending for over 7½ years and remains at the pleading stage. A small portion of that time is due to Plaintiffs' amendments to their Complaint. But the vast majority is due to the district court's taking over a year after briefing was complete to issue its dismissal on *forum non conveniens* grounds (necessitating an appeal to reverse),

then taking a year to hear argument on the Second Amended Complaint, and then taking another year to issue its order dismissing the Third Amended Complaint. *See* Docs. 91, 131, 167, 183, 195, 203.  The inefficiency of proceedings so far suggests that a new district court judge likely would aid the progress of this litigation.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment and order that the case be reassigned to a new district court judge.

November 6, 2023

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ *David M. Cooper*

Juan P. Morillo
Derek L. Shaffer
Gabriel F. Soledad
Lauren H. Dickie
David H. Needham
1300 I Street N.W., 9th Fl.
Washington, DC 20005
(202) 538-8000
juanmorillo@quinnemanuel.com
derekshaffer@quinnemanuel.com
gabrielsoledad@quinnemanuel.com
laurendickie@quinnemanuel.com
davidneedham@quinnemanuel.com

David M. Cooper
51 Madison Avenue, 22nd floor
New York, NY 10010
(212) 849-7000
davidcooper@quinnemanuel.com

Terry L. Wit
50 California St., 22nd Fl.
San Francisco, CA 94111
(415) 875-6600
terrywit@quinnemanuel.com

John F. O'Sullivan
Laura N. Ferguson
2601 S. Bayshore Dr., Ste. 1500
Miami, FL 33123
(305) 402-4880
johnosullivan@quinnemanuel.com
lauraferguson@quinnemanuel.com

HOMER BONNER JACOBS
ORTIZ, P.A.

Peter W. Homer
Gregory J. Trask
Kevin P. Jacobs
1441 Brickell Avenue
Miami, FL 33131
(305) 350-5100
phomer@homerbonner.com
gtrask@homerbonner.com
kjacobs@homerbonner.com

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,279 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type, and with the type-style requirements of Fed. R. App. P. 32(a)(6).

/s/ *David M. Cooper*
David M. Cooper
*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I, David M. Cooper, a member of the Bar of this Court, hereby certify that on November 6, 2023, I electronically filed the foregoing "Plaintiffs-Appellants' Opening Brief" with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *David M. Cooper*
David M. Cooper
*Attorney for Plaintiffs-Appellants*