No. 23-13152

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

OTTO CANDIES, LLC, ET AL.,

*Plaintiffs-Appellants,*

—v.—

CITIGROUP INC.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of Florida, No. 1:16-cv-20725-DPG

---

**BRIEF OF DEFENDANT-APPELLEE**

---

Manuel A. Garcia-Linares
Georgia A. Thompson
DAY PITNEY LLP
396 Alhambra Circle
14th Floor
Miami, Florida 33134
(305) 373-4000
mgarcialinares@daypitney.com
gthompson@daypitney.com

Adam S. Hakki
John Gueli
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
ahakki@shearman.com
jgueli@shearman.com

Michael Mitchell
SHEARMAN & STERLING LLP
401 9th Street, NW
Washington, D.C. 20004
(202) 508-8000
michael.mitchell@shearman.com

*Counsel for Defendant-Appellee*

No. 23-13152, *Otto Candies, LLC, et al. v. Citigroup Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>APPELLEE'S CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellee Citigroup Inc. certifies that Plaintiffs-Appellants' Certificate of Interested Persons, filed October 13, 2023, is correct and complete.

Citigroup Inc. (NYSE: C) is a publicly-traded corporation and has no parent corporation. No publicly-held corporation holds more than 10 percent of the stock of Citigroup Inc.

/s/ *Adam S. Hakki*
Adam S. Hakki
*Counsel for Defendant-Appellee*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(2) and Eleventh Circuit Rule 28-1(c), Appellee respectfully submits that oral argument will assist the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

STATEMENT OF ISSUES ................................................................3

STATEMENT OF THE CASE...........................................................4

    A.    The Pemex/OSA Cash Advance Program.............................4

    B.    Citigroup Learns of Falsified
        Documentation And OSA Collapses.....................................5

    C.    Plaintiffs And Their Claims .................................................7

    D.    Procedural History................................................................8

SUMMARY OF ARGUMENT ...........................................................9

STANDARD OF REVIEW ...............................................................13

ARGUMENT ....................................................................................15

I.    PLAINTIFFS' MISREPRESENTATION AND RELIANCE
    ALLEGATIONS DO NOT SATISFY THE RULE 9(B)
    PLEADING REQUIREMENTS APPLICABLE TO THEIR
    RICO AND COMMON LAW FRAUD CLAIMS.......................................15

    A.    The TAC Does Not Allege Actionable Misconduct By Citigroup .....15

        1.    Most Of The TAC's Alleged Misstatements
            Cannot Be Attributed To Citigroup .........................................16

            a.    Citigroup Cannot Be Primarily Liable For
                Misstatements By OSA And Its Agents .........................18

            b.    Plaintiffs' Attempts To Impose Primary Liability On
                Citigroup For OSA's Misstatements Are Meritless .......20

2.    None Of The "Citigroup" Misrepresentations Supports A Fraud Claim Against Citigroup ...........................22

B.    The TAC Fails To Adequately Allege Reliance .................................26

1.    Plaintiffs' Purported Reliance On The 2008 Bond Offering Memorandum And The Pareto Materials Is Inadequately Pleaded .............................................27

2.    Plaintiffs' Other Allegations Of Reliance Are Inadequate .......29

3.    The Bond Plaintiffs' Reliance Allegations Are Insufficient To State A "Holding" Claim .........................30

II.    PLAINTIFFS' RICO CLAIMS ARE ALSO DEFICIENT FOR AT LEAST TWO ADDITIONAL, INDEPENDENT REASONS ..............32

A.    Plaintiffs Do Not Allege A Cognizable Predicate Act.......................32

B.    The TAC Fails To Plead Continuity ..................................................36

III.    PLAINTIFFS' RICO AND COMMON LAW CONSPIRACY CLAIMS WERE PROPERLY DISMISSED ........................................................37

A.    Plaintiffs Improperly Conflate Banamex and Citigroup To Ascribe Banamex's Supposed Knowledge To Citigroup ..................38

B.    Plaintiffs' Scienter Allegations Are Unsupported, Implausible, And Contradicted By The TAC Itself ................................................42

IV.    PLAINTIFFS' AIDING AND ABETTING CLAIMS WERE PROPERLY DISMISSED.................................................................45

A.    The TAC Does Not Adequately Plead Citigroup's Actual Knowledge Of OSA's Fraud ............................................................45

B.    The TAC Does Not Adequately Plead That Citigroup Substantially Assisted OSA's Fraud ..................................................47

V.    PLAINTIFFS' VICARIOUS LIABILITY CLAIMS WERE
      PROPERLY DISMISSED..............................................................48

      A.    Plaintiffs' Vicarious Liability Claims Are Time-Barred ...................49

      B.    Plaintiffs Should Be Judicially Estopped From Asserting
            Their New Vicarious Liability Claims................................................51

VI.   PLAINTIFFS' REASSIGNMENT REQUEST IS BASELESS ...................53

CONCLUSION .......................................................................................54

# TABLE OF CITATIONS

**Page(s)**

## Cases

*AcryliCon USA, LLC v. Silikal GMBH & Co.*,
　　46 F.4th 1317 (11th Cir. 2022) .......................................................................54

*Adams v. Rothstein*,
　　2012 WL 1605098 (S.D. Fla. May 8, 2012)....................................................35

*Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*,
　　625 F.3d 185 (5th Cir. 2010) ...........................................................................19

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
　　416 F.3d 1242 (11th Cir. 2005) ..........................................................13, 14, 44

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
　　482 F.3d 1309 (11th Cir. 2007) ................................................................15, 29

*Am. Dental Ass'n v. Cigna Corp.*,
　　605 F.3d 1283 (11th Cir. 2010) ..................................................13, 14, 27, 28

*Am. United Life Ins. Co. v. Martinez*,
　　480 F.3d 1043 (11th Cir. 2007) ................................................................15, 37

*Anderson v. Branch Banking & Tr. Co.*,
　　2014 WL 11706453 (S.D. Fla. May 19, 2004)...............................................47

*Andrews v. AT&T*,
　　95 F.3d 1014 (11th Cir. 1996) .........................................................................26

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)........................................................................13, 14, 46

*Ashland, Inc. v. Oppenheimer & Co.*,
　　648 F.3d 461 (6th Cir. 2011) ...........................................................................46

*Baker v. City of Madison, Ala.*,
    67 F.4th 1268 (11th Cir. 2023) .......................................................................14

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
    189 F.3d 321 (3d Cir. 1999) .............................................................32, 33, 35

*In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*,
    2013 WL 6504801 (S.D.N.Y. Dec. 11, 2013) ..............................................31

*BCJJ, LLC v. Lefevre*,
    2011 WL 1296682 (M.D. Fla. Mar. 31, 2011) .............................................19

*Beck v. Prupis*,
    162 F.3d 1090 (11th Cir. 1998), *aff'd*,
    529 U.S. 494 (2000).......................................................................................30

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................13

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ...............................................................15, 25

*Bruhl v. Conroy*,
    2007 WL 983228 (S.D. Fla. Mar. 27, 2007) .....................................19, 20, 31

*Burnes v. Pemco Aeroplex, Inc.*,
    291 F.3d 1282 (11th Cir. 2002) .....................................................................51

*Caron v. NCL (Bahamas), Ltd.*,
    910 F.3d 1359 (11th Cir. 2018) .....................................................................50

*Chang v. JPMorgan Chase Bank, N.A.*,
    845 F.3d 1087 (11th Cir. 2017) ...............................................................42, 47

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996) ..........................................................................41

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997) ...............................................................53, 54

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) ........................................................25, 41, 43

*Coffey v. WCW & Air, Inc.*,
    2018 WL 4154256 (N.D. Fla. Aug. 30, 2018) .............................................22

*Collado v. United Parcel Serv., Co.*,
    419 F.3d 1143 (11th Cir. 2005) ...................................................................13

*In re Comshare Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) .......................................................................41

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
    561 F. App'x 882 (11th Cir. 2014)...............................................................45

*Crenshaw v. Lister*,
    556 F.3d 1283 (11th Cir. 2009) .............................................................14, 42

*Daedalus Cap. LLC v. Vinecombe*,
    625 F. App'x 973 (11th Cir. 2015)...............................................................37

*Davenport v. U.S.*,
    217 F.3d 1341 (11th Cir. 2000) .............................................................49, 51

*Davidson v. Wilson*,
    763 F. Supp. 1470 (D. Minn. 1991), *aff'd*,
    973 F.2d 1391 (8th Cir. 1992) .....................................................................42

*Davies v. GetFugu, Inc.*,
    2010 WL 11597458 (C.D. Cal. Aug. 26, 2010) ...........................................34

*Defer LP v. Raymond James Fin., Inc.*,
    2010 WL 3452387 (S.D.N.Y. Sept. 2, 2010) ...............................................41

*Defer LP v. Raymond James Fin., Inc.*,
    654 F. Supp. 2d 204 (S.D.N.Y. 2009) ....................................................41, 42

*Doe v. Emerson*,
    2006 WL 2971314 (Fla. 9th JCC June 2, 2006)...........................................49

*Dusek v. JPMorgan Chase & Co.*,
    832 F.3d 1243 (11th Cir. 2016) ....................................................33

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)......................................................................28

*First Fla. Bank, N.A. v. Max Mitchell & Co.*,
    558 So. 2d 9 (Fla. 1990) ..............................................................21

*Feng v. Walsh*,
    2021 WL 8055449 (S.D. Fla. Dec. 21, 2021),
    *report and recommendation adopted*,
    2022 WL 669198 (S.D. Fla. Mar. 7, 2022) ..................................20

*Fernau v. Enchante Beauty Prods., Inc.*,
    847 F. App'x 612 (11th Cir. 2021)..........................................20, 29

*Ferrell v. Durbin*,
    311 F. App'x 253 (11th Cir. 2009)..........................................25, 36

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ........................................................46

*Foreline Sec. Corp. v. Scott*,
    871 So. 2d 906 (Fla. 5th DCA 2004)............................................28

*Franza v. Royal Caribbean Cruises, Ltd.*,
    772 F.3d 1225 (11th Cir. 2014) ....................................................50

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ....................................................19

*Gatz v. Ponsoldt*,
    297 F. Supp. 2d 719 (D. Del. 2003) .............................................34

*Gen. Asphalt Co., Inc. v. Bob's Barricades, Inc.*,
    22 So. 3d 697 (Fla. 3d DCA 2009)................................................50

*Glock v. Glock*,
    247 F. Supp. 3d 1307 (N.D. Ga. 2017)..........................................44

*Goldschmidt v. Holman*,
　　571 So. 2d 422 (Fla. 1990) ............................................................50

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
　　341 F.3d 1292 (11th Cir. 2003) ....................................................27

*Griffin Indus., Inc. v. Irvin*,
　　496 F.3d 1189 (11th Cir. 2007) ....................................................14

*Hightower v. Cohen*,
　　2009 WL 9042127 (E.D.N.Y. Sept. 30, 2009) ..............................28

*H. J. Inc. v. Nw. Bell Tel. Co.*,
　　492 U.S. 229 (1989)......................................................................36

*Honig v. Kornfeld*,
　　339 F. Supp. 3d 1323 (S.D. Fla. 2018) ..........................................48

*Hosch v. Wachovia Bank, N.A.*,
　　815 F. App'x 352 (11th Cir. 2020)...........................................14, 15

*Howard v. Am. Online Inc.*,
　　208 F.3d 741 (9th Cir. 2000) ...................................................33, 37

*Humana, Inc. v. Castillo*,
　　728 So. 2d 261 (Fla. 2d DCA 1999)..............................................26

*Isaiah v. JPMorgan Chase Bank, N.A.*,
　　2017 WL 5514370 (S.D. Fla. Nov. 15, 2017) ...............................47

*Jackson v. BellSouth Telecomms.*,
　　372 F.3d 1250 (11th Cir. 2004) ........................................13, 36, 37

*Jacobini v. KPMG LLP*,
　　314 F. Supp. 2d 1172 (M.D. Fla. 2004) ........................................35

*Jordan v. Scott Fetzer Co.*,
　　2007 WL 4287719 (M.D. Ga. Dec. 4, 2007)..................................27

*Joseph v. Norman LaPorte Realty, Inc.*,
    508 So. 2d 496 (Fla. 3d DCA 1987)..............................................................21

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001) .........................................................................43

*Koch v. Royal Wine Merchs., Ltd.*,
    907 F. Supp. 2d 1332 (S.D. Fla. 2012).........................................................21

*Kushner v. Beverly Enters., Inc.*,
    317 F.3d 820 (8th Cir. 2003) ........................................................................41

*Lamm v. State St. Bank & Tr.*,
    749 F.3d 938 (11th Cir. 2014) ......................................................................47

*Lamm v. State St. Bank & Tr. Co.*,
    889 F. Supp. 2d 1321 (S.D. Fla. Aug. 21, 2012), *aff'd*,
    749 F.3d 938 (11th Cir. 2014) ......................................................................45

*Lance v. Wade*,
    457 So. 2d 1008 (Fla. 1984) .........................................................................26

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012)....................................................45, 46, 47

*Lawrence v. Bank of Am., N.A.*,
    2010 WL 3467501 (M.D. Fla. Aug. 30, 2010), *aff'd*,
    455 F. App'x 904 (11th Cir. 2012)..........................................................45, 46

*Lerner v. Colman*,
    26 F.4th 71 (1st Cir. 2022) ...........................................................................33

*Licht v. Watson*,
    567 F. App'x 689 (11th Cir. 2014)...........................................................32, 34

*Mann v. Palmer*,
    713 F.3d 1306 (11th Cir. 2013) ...............................................................14, 43

*Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*,
    193 So. 3d 902 (Fla. 3d DCA 2015)...................................................18, 20, 21

*In re Marsh & McLennan Cos. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...........................................42

*Mayagüez S.A. v. Citibank, N.A.*,
  2022 WL 901627 (S.D.N.Y. Mar. 25, 2022)..................................40

*Meridian Tr. Co. v. Batista*,
  2018 WL 4693533 (S.D. Fla. Sept. 26, 2018)................................41

*MLMSK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) .........................................................34

*Moore v. Baker*,
  989 F.2d 1129 (11th Cir. 1993) .....................................................51

*MP, LLC v. Sterling Holding, LLC*,
  231 So. 3d 517 (Fla. 3d DCA 2017)...............................................46

*Navigators Ins. Co. v. Markel Am. Ins. Co.*,
  477 F. App'x 596 (11th Cir. 2012).................................................48

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)........................................................................51

*In re Nokia ERISA Litig.*,
  2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) .................................41

*O'Malley v. O'Neill*,
  887 F.2d 1557 (11th Cir. 1989) .....................................................38

*Omnipol, A.S. v. Worrell*,
  421 F. Supp. 3d 1321 (M.D. Fla. 2019) .........................................16

*In re Optionable Sec. Litig.*,
  577 F. Supp. 2d 681 (S.D.N.Y. 2008) ............................................44

*Otto Candies, LLC v. Citigroup, Inc.*,
  963 F.3d 1331 (11th Cir. 2020)...............................................*passim*

*Otto Candies, LLC v. KPMG, LLP*,
　　2020 WL 4917596 (Del. Ch. Aug. 21, 2020) ................................................ 17

*Otto Candies, LLC v. KPMG LLP*,
　　2019 WL 994050 (Del. Ch. Feb. 28, 2019) .................................................. 31

*Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*,
　　881 So. 2d 565 (Fla. 3d DCA 2004) ............................................................ 28

*Pelfrey v. Mahaffy*,
　　2018 WL 3110794 (S.D. Fla. Feb. 2, 2018) ................................................... 5

*Pelletier v. Zweifel*,
　　921 F.2d 1465 (11th Cir. 1991) ................................................................... 26

*Perlman v. Wells Fargo Bank, N.A.*,
　　559 F. App'x 988 (11th Cir. 2014) ......................................................... 46, 47

*Pruitt v. U.S.*,
　　274 F.3d 1315 (11th Cir. 2001) ............................................................. 49, 51

*Pulte Home Corp. v. Osmose Wood Preserving, Inc.*,
　　60 F.3d 734 (11th Cir. 1995) ...................................................................... 28

*Raimi v. Furlong*,
　　702 So. 2d 1273 (Fla. 3d DCA 1997) ......................................................... 38

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
　　119 F.3d 935 (11th Cir. 1997) ............................................................... 38, 47

*R.J. Reynolds Tobacco Co. v. Whitmire*,
　　260 So. 3d 536 (Fla. 1st DCA 2018) ........................................................... 28

*Rogers v. Cisco Sys., Inc.*,
　　268 F. Supp. 2d 1305 (N.D. Fla. 2003) ....................................................... 31

*Rogers v. Nacchio*,
　　241 F. App'x 602 (11th Cir. 2007) ......................................................... 29, 37

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
　　773 F. Supp. 342 (S.D. Fla. 1991)..................................................28

*S&S Air Conditioning Co. v. Freire*,
　　555 So. 2d 387 (Fla. 3d DCA 1989).......................................18, 20

*Seippel v. Jenkens & Gilchrist, P.C.*,
　　341 F. Supp. 2d 363 (S.D.N.Y. 2004) ..........................................35

*Sensoria, LLC v. Kaweske*,
　　2022 WL 204606 (D. Colo. Jan. 24, 2022) ..................................35

*Sinaltrainal v. Coca-Cola Co.*,
　　578 F.3d 1252 (11th Cir. 2009) ......................................13, 14, 43

*Stargel v. SunTrust Banks, Inc.*,
　　791 F.3d 1309 (11th Cir. 2015) ....................................................54

*Sun Life Assur. Co. of Can. v. Imperial Premium Fin., LLC*,
　　904 F.3d 1197 (11th Cir. 2018) ....................................................46

*In re Sunterra Corp. Sec. Litig.*,
　　199 F. Supp. 2d 1308 (M.D. Fla. 2002) .......................................43

*In re Takata Airbag Prods. Liab. Litig.*,
　　524 F. Supp. 3d 1266 (S.D. Fla. 2021)..........................................21

*TransPetrol, Ltd. v. Radulovic*,
　　764 So. 2d 878 (Fla. 4th DCA 2000)......................................21, 22

*Trust Real Estate Ventures, LLC v. Desnick*,
　　2018 WL 4523333 (Fla. 11th JCC July 2, 2006) .........................46

*U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
　　290 F.3d 1301 (11th Cir. 2002) ....................................................44

*Vicon Fiber Optics Corp. v. Scrivo*,
　　201 F. Supp. 2d 216 (S.D.N.Y. 2002) ..........................................37

*Wallace v. N.Y.C. Dep't of Corr.*,
    1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) .....................................................5

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
    287 F. App'x 81 (11th Cir. 2008)...........................................................19, 38

*White v. Berger*,
    769 F. App'x 784 (11th Cir. 2019)................................................................54

*Wiand v. Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013) .......................................................46

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ...................................................13, 27, 30

*Woods v. Michael*,
    2021 WL 3355459 (11th Cir. Aug. 3, 2021) ................................................34

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) .........................................................................19

*Xia Bi v. McAuliffe*,
    927 F.3d 177 (4th Cir. 2019) .......................................................................27

*ZC Ins. Co. v. Brooks*,
    847 So. 2d 547 (Fla. 4th DCA 2003)...........................................................22

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ...........................................................19, 20

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*,
    917 So. 2d 368 (Fla. 5th DCA 2005)............................................................47

## Statutes and Rules

Fed. R. Civ. Proc. 9(b) .....................................................................*passim*

Fed. R. Civ. Proc. 15(c)(2)........................................................................49

18 U.S.C. § 1964(c) ...................................................................................32

Fla. Stat. § 95.11(3)(p) (2005) ...................................................................49

## **Other Authorities**

*In the Matter of Citigroup Inc.*,
      Exchange Act Release No. 83858,
      2018 WL 3913653 (Aug. 16, 2018) ......................................................*passim*

## INTRODUCTION

Plaintiffs are creditors of Oceanografía S.A. de C.V. ("OSA"), a Mexican oil services company. They claim losses arising from OSA's 2014 collapse following revelations that OSA had submitted falsified documents to Banco Nacional de México S.A. ("Banamex," an indirect subsidiary of defendant Citigroup) in connection with a receivables financing program through which Banamex advanced funds to OSA in OSA's capacity as a vendor of Petróleos Mexicanos ("Pemex"), Mexico's national oil company.

Everyone agrees a fraud occurred within the OSA financing program. But that does not justify Plaintiffs' claims against Citigroup, especially given that Citigroup was itself the biggest victim of OSA's fraud — as confirmed by the SEC and by Citigroup's financial statements filed with the SEC (which are not alleged to have been false). Nor is it sufficient that Plaintiffs' 540-page, 1,977-paragraph Third Amended Complaint ("TAC") seemingly catalogues every encounter any of them may ever have had with "Citigroup," regardless of whether they actually spoke with someone from Citigroup (as opposed to Banamex or OSA) or how trivial or even relevant the alleged interaction.

The District Court carefully parsed the TAC and rightly concluded that it fails to allege *facts* supporting Plaintiffs' overreaching attempt to render Citigroup liable for OSA's fraud. For example, although Plaintiffs insist their claims are

based on misrepresentations and omissions made to them by "Citigroup and/or OSA" (Appellants' Opening Brief ["AOB"] at 10), the District Court explained that, in actuality, "the bulk of Plaintiffs' allegations primarily rely on the actions of OSA" (Appendix Volume ["Vol."] IX, Dkt. 203 at 20). And the District Court recognized that the TAC's length cannot mask Plaintiffs' failure to plead with the particularity demanded by Rule 9(b) any basis for holding Citigroup responsible for OSA's misstatements or establishing each Plaintiff's individual reliance on any claimed misstatements (whether allegedly made by OSA, Citigroup, or Banamex).

After years of comprehensive investigations in the United States and Mexico, Plaintiffs cannot allege any government agency has ever asserted that *Citigroup* or any of its employees engaged in any fraud or knowing misconduct in connection with the OSA financing program. Plaintiffs nevertheless contend in an entirely conclusory fashion that Citigroup (as opposed to Banamex) employees were knowing participants in the fraud. But the TAC's specific allegations are to the contrary, and Plaintiffs make no alter ego, veil-piercing, or similar arguments that could justify imputing the alleged knowledge of Banamex employees to Citigroup. Moreover, Plaintiffs' "information and belief" theory for why Citigroup would knowingly participate in the scheme is inherently implausible, refuted by the SEC Order on which the TAC relies, and contradicted by the TAC itself.

## STATEMENT OF ISSUES

1.      Whether Plaintiffs' federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law fraud-based claims were properly dismissed because the TAC fails to plead with particularity that Citigroup (or any of its purported agents) made an actionable misrepresentation or omission to Plaintiffs upon which they relied to their detriment.

2.      Whether Plaintiffs' RICO claims are subject to dismissal on the alternative grounds that the TAC fails to plead a cognizable predicate act or the element of "continuity."

3.      Whether Plaintiffs' RICO and common law conspiracy claims are subject to dismissal because Plaintiffs fail to plead an underlying RICO or fraud claim, or, alternatively, do not plead particularized facts establishing Citigroup's supposed fraudulent intent and knowing participation in OSA's fraud.

4.      Whether Plaintiffs' aiding and abetting claim is subject to dismissal for failing to allege particularized facts establishing Citigroup's actual knowledge of, or substantial assistance in, OSA's fraud.

5.      Whether Plaintiffs' vicarious liability claims were properly dismissed due to Plaintiffs' failure to adequately plead an underlying tort by Citigroup's alleged agents, or, alternatively, because those claims are time-barred or precluded by judicial estoppel.

6.     Whether any supposed error by the District Court was of a nature to warrant reassignment if the case is remanded.

## STATEMENT OF THE CASE

### A.     The Pemex/OSA Cash Advance Program

As part of a receivables financing arrangement established in 2008, Banamex advanced funds to Pemex's vendors, including OSA, who paid interest on the advances and assigned Banamex their rights to payment from Pemex. (Vol. VI, Dkt. 187 ¶¶ 4, 50, 73.)  OSA was required to provide Banamex: (i) a cash advance request form; (ii) a work estimate counter-signed by Pemex; and (iii) a Pemex work authorization.  (*Id.* ¶¶ 97, 138.)  A Banamex employee was supposed to verify with Pemex that it had authorized the work and that the advance request was consistent with relevant agreements.  (*Id.* ¶¶ 98, 139.)

Although Citigroup is not alleged to have been a party to this financing arrangement, Plaintiffs mischaracterize the financing as established and managed by "Citigroup" and contend that "Citigroup" made cash advances to OSA.  (AOB at 5, 6.)  The TAC confirms, however, that the cash advance program was established "within Banamex" (Vol. VI, Dkt. 187 ¶ 73), utilized "Banamex credit facilities" (*id.* ¶ 74), and that "Banamex provided [the] cash advances to OSA" (*id.* ¶ 50; *see id.* ¶¶ 75, 84).  Similarly, Plaintiffs contend that "Citigroup" entered into a "secret" agreement with OSA giving OSA responsibility for validating its own

documents and allowing OSA to receive cash advances.  (AOB at 6, 7.)  The referenced contract, however, contains no mention of Citigroup (Dkt. 191-2), and the TAC explains that OSA entered the contract "with Banamex" (Vol. VI, Dkt. 187 ¶ 90), the contract was signed "on behalf of Banamex" (*id.*), and the contract concerned Banamex's implementation of the cash advance facility (*id.* ¶ 106).

### B. Citigroup Learns Of Falsified Documentation And OSA Collapses

Citigroup conducted a review of Banamex's OSA advances in February 2014 after a Mexican regulator barred OSA from contracting with Pemex due to an unrelated insurance issue.  (Vol. VI, Dkt. 187 ¶¶ 163–65.)  When Citigroup contacted Pemex about OSA's receivables, Pemex stated it had not signed many of the work estimates and authorizations OSA had provided to Banamex from September 2013 to February 2014.  (*Id.* ¶¶ 166–68.)  On February 28, 2014, Citigroup publicly disclosed OSA's fraud and ended the cash advance program.  (*Id.* ¶ 170.)[1]

---

[1] The TAC alleges that in February 2014 Citigroup "already knew" about the forged Pemex documents.  (*Id.* ¶ 168.)  Plaintiffs' initial complaint, however, acknowledged Citigroup learned of the falsified documents "for the first time" in February 2014.  (Vol. I, Dkt. 1 ¶ 98.)  The Court need not accept as true Plaintiffs' changed (and conclusory) allegation — made in response to Citigroup's motion to dismiss (Vol. I, Dkt. 50 at 4, 31) — that "direct[ly] contradict[s]" their original pleading.  *See, e.g.*, *Pelfrey v. Mahaffy*, 2018 WL 3110794, at *5 (S.D. Fla. Feb. 2, 2018); *Wallace v. N.Y.C. Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996); *see also In the Matter of Citigroup Inc.*, 2018 WL 3913653 ("SEC Order"),

On March 1, 2014, Mexican authorities seized OSA and its assets. (Vol. VI, Dkt. 187 ¶ 177.) Soon thereafter, the Banamex employee responsible for validating documents with Pemex was terminated, and, by May 2014, 11 more Banamex employees were terminated. (*Id.* ¶ 172.) The CEO of OSA, Amado Yáñez, and three former Banamex (not Citigroup) employees were criminally charged or subject to arrest warrants (*id.* ¶¶ 177–79), and Mexican regulators fined Banamex (not Citigroup) for violating Mexican banking laws (*id.* ¶¶ 180–81).

Plaintiffs do not allege any U.S. or foreign government assertions of fraud or knowing misconduct *by Citigroup*. To the contrary, as the TAC acknowledges, the SEC fined Citigroup for "lacking a sufficient system of internal accounting controls concerning Banamex" ***to detect OSA's fraud*** and thus avoid the nearly $500 million loss that Citigroup, as Banamex's owner, consequently suffered. (*Id.* ¶ 186.) *See SEC Order*, 2018 WL 3913653, at *1–3 & *8 ¶ 47.

Nevertheless, Plaintiffs contend that (i) Citigroup admitted a "Citigroup" employee was directly involved in the fraud and (ii) Mexican authorities concluded "Citigroup" employees were criminally involved in the scheme. (AOB at 8–9.) The claimed Citigroup admission, however, does not identify the terminated employee's employer (Vol. II, Dkt. 83-4), and Plaintiffs' verified complaint in

---

at *1 (it was not until February 2014 "that Citigroup discovered many of the work estimates were falsified").

another action acknowledged he was the Banamex employee responsible for verifying documents with Pemex (*see infra* at 38). Further, the only *facts* in the TAC confirm that the employees identified by Mexican authorities were Banamex employees. (*See* Vol. VI, Dkt. 187 ¶¶ 179–81; *infra* at 39–40).

Indeed, the TAC alleges that the individuals who authorized the cash advance facility, approved OSA's false advance requests, signed the "secret" contract with OSA, and participated in the scheme were employees of Citigroup's Institutional Client Group ("ICG") banking division *or* "Banamex employees supervised and managed by Citigroup's ICG." (Vol. VI, Dkt. 187 ¶ 148.) But as the SEC Order on which Plaintiffs rely for so much of their TAC explains, "[r]egardless of whether the [cash advance] facility was in … ICG, Banamex had its own employees in Mexico that were responsible for implementing and monitoring Banamex's accounts receivable factoring facility." *SEC Order*, at *2 ¶ 5. And the "very employees who stood to gain" from increasing the cash advances and are alleged to have misclassified Banamex's credit risk in order to do so (Vol. VI, Dkt. 187 ¶ 117) — another allegation drawn from the SEC Order — are identified in that Order as Banamex employees. *SEC Order*, at *5 ¶¶ 21–23.

## C.    Plaintiffs And Their Claims

The 30 Plaintiffs are: (1) nine shipping companies that sold or leased vessels or provided services to OSA ("Shipping Plaintiffs"); (2) 13 investment funds that

purchased bonds issued by OSA in 2008 and/or 2013 ("Bond Plaintiffs"); (3) six

investment managers of funds that purchased OSA's 2008 and/or 2013 Bonds

("Investment Manager Plaintiffs"); (4) Nordic Trustee AS, the trustee for the 2013

Bondholders; and (5) Coöperatieve Rabobank U.A. ("Rabobank"), a lender to

OSA. (*See* Vol. VI, Dkt. 187 ¶¶ 20–47.) Plaintiffs allege they were damaged due

to misrepresentations and omissions by "Citigroup and OSA" that led them to

invest in or do business with OSA and to maintain their investments in or continue

doing business with OSA. (*Id.* ¶¶ 8, 147; AOB at 10.)

### D.    Procedural History

This Court reversed the *forum non conveniens* dismissal of Plaintiffs'

Amended Complaint because Plaintiffs allegedly sought to hold Citigroup

independently liable for its own conduct in the United States. *Otto Candies, LLC*

*v. Citigroup, Inc.*, 963 F.3d 1331, 1343 (11th Cir. 2020). On remand, the District

Court dismissed Plaintiffs' Second Amended Complaint, without prejudice, but

advised Plaintiffs that (i) because this is not a class action, each Plaintiff must

plead facts establishing its claims on an individual basis, including with respect to

reliance, and (ii) they needed to allege Citigroup's culpability based on its own

actions, not OSA's actions, and provide details regarding Citigroup's alleged

misconduct as to each Plaintiff. (Vol. V, Dkt. 184 at 19, 48–49.)

As the District Court explained, however, in the TAC it remains the case that "the bulk of Plaintiffs' allegations primarily rely on the actions of OSA." (Vol. IX, Dkt. 203 at 20.) The District Court accordingly dismissed the TAC because: (i) Plaintiffs' fraud-based claims failed to allege with particularity that Citigroup made a false statement of material fact to them or that they relied on any such statement (*id.* at 5–8); (ii) Plaintiffs' conspiracy and aiding and abetting claims failed to adequately allege that Citigroup was a knowing participant in or had knowledge of OSA's fraud (*id.* at 8–20); and (iii) Plaintiffs' vicarious liability claims failed to adequately allege that Citigroup's Banamex or Citibank subsidiaries made actionable misstatements to Plaintiffs upon which they relied (*id.* at 20–23); without needing to reach Citigroup's alternative arguments for dismissal. The District Court afforded Plaintiffs an opportunity to amend their complaint yet again, but Plaintiffs elected to stand on their TAC.

## SUMMARY OF ARGUMENT

I.     Plaintiffs' RICO and common law fraud-based claims fail to satisfy Rule 9(b). *First*, the TAC fails to plead with particularity that Citigroup (or Banamex or Citibank) made any actionable misrepresentation or omission. The overwhelming majority of the alleged misstatements were made by OSA or its agents, and the TAC pleads no particularized facts attributing those statements to Citigroup or establishing that Citigroup had a duty to disclose to Plaintiffs what it

9

supposedly "knew" about OSA's fraud. *Infra* at I.A.1.a–b. The small number of alleged misrepresentations purportedly by "Citigroup" are not actionable for various reasons, such as because the TAC impermissibly "blends" Citigroup and Banamex or fails to explain how the statements were misleading. *Infra* at I.A.2.

*Second*, Plaintiffs fail to adequately plead they relied on any claimed misstatement. With respect to the documents published by OSA and its agents, Plaintiffs do not allege anyone *read* the supposedly misleading material. Further, Plaintiffs' uniform generalization that they would not have invested in or done business with OSA had they known about the fraud fails to plead how each (or any) Plaintiff was misled by any particular alleged misstatement. Finally, the Bond Plaintiffs fail to plead their claimed reliance on any misstatement in deciding to retain their OSA Bonds with the heightened specificity demanded by Florida law to state a "holding" claim. *Infra* at I.B.1–3.

II. Plaintiffs' RICO claims are also subject to dismissal for at least two alternative reasons. *First*, because the claimed wire fraud predicate acts allege conduct actionable as securities fraud, they cannot support a RICO claim. *Infra* at II.A. *Second*, because the TAC pleads OSA's fraud with particularity for only a six-month period, and, further, pleads that Citigroup ended the cash advance program and publicly disclosed the fraud in February 2014, Plaintiffs cannot establish the "continuity" element necessary to state a RICO claim. *Infra* at II.B.

10

III.    Plaintiffs' RICO and common law conspiracy claims necessarily fail due to Plaintiffs' inability to plead an underlying RICO or fraud claim.  Further, the conspiracy claims are deficient because the TAC does not plead particularized facts establishing Citigroup's supposed fraudulent intent and knowing participation in OSA's fraud.  Plaintiffs cannot allege Citigroup's scienter by conflating Banamex and Citigroup, conclusorily characterizing Banamex employees as Citigroup employees, or ascribing Banamex's supposed knowledge to Citigroup. *Infra* at III.A.  And Plaintiffs' theory for why Citigroup knowingly participated in a fraud of which it would logically be (and was) the victim — because Pemex voluntarily agreed after-the-fact to reimburse Citigroup for the unauthorized OSA cash advances — is inherently not credible, based solely on "information and belief" allegations, and contradicted by the TAC itself.  *Infra* at III.B.

IV.    Nor does the TAC adequately allege an aiding and abetting claim against Citigroup.  Federal courts applying Florida law consistently require an aiding and abetting plaintiff to allege facts supporting a "strong inference" of the defendant's knowledge of the underlying fraud.  Plaintiffs do not cite a single case (state or federal) stating otherwise.  But whether a "strong" or "plausible" inference should apply is irrelevant here, because the TAC alleges no particularized facts demonstrating that Citigroup had *actual knowledge* of OSA's fraud.  *Infra* at IV.A.  The TAC also fails to plead that *Citigroup* substantially

assisted OSA's fraud, instead invoking banking services provided by Citigroup subsidiaries. *Infra* at IV.B.

V.    Plaintiffs' vicarious liability claims against Citigroup necessarily fail because the TAC does not adequately plead that Banamex (or Citibank) committed an underlying tort. Moreover, these claims are time-barred because they (i) are subject to a four-year statute of limitations, (ii) were not asserted until nearly eight years after OSA's fraud was publicly revealed, and (iii) cannot "relate back" to Plaintiffs' initial complaint because the agency theories of liability upon which they are predicated implicate new factual allegations. *Infra* at V.A. These claims are also barred by judicial estoppel. Plaintiffs secured reversal of the District Court's *forum non* dismissal based on representations that their claims sought to hold Citigroup independently liable for its own conduct in the U.S. and were not focused on Banamex's conduct in Mexico. Plaintiffs' newly-asserted vicarious liability claims assert the contrary — that Citigroup may be secondarily liable under agency theories for Banamex's conduct in Mexico. *Infra* at V.B.

VI.    Plaintiffs deny any bias on the part of District Judge Gayles. There is therefore no basis to conclude that any purported error below (and we submit there was none) justifies Plaintiffs' extraordinary and improper reassignment request. *Infra* at VI.

12

## STANDARD OF REVIEW

The TAC's dismissal is reviewed *de novo*. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). Because the only question for this Court is the correctness of the result below, *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1150–52 (11th Cir. 2005), it may affirm the judgment on any ground supported by the record, *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019); *Am. Dental*, 605 F.3d at 1293 n.3.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Similarly, conclusory allegations, legal conclusions masquerading as facts, and unsupported conclusions of mixed fact and law, will not prevent dismissal. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262–63, 1271 (11th Cir. 2004).

Plaintiffs are entitled to *reasonable* inferences from well-pleaded facts. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). But the Court is "not required to draw Plaintiffs' inference," *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005), and "may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which

13

suggest lawful conduct" rather than unlawful conduct, *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). Nor is the Court required to accept as true allegations made "upon information and belief." *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). "Bald assertions will not overcome a Rule 12(b)(6) motion," *Aldana*, 416 F.3d at 1248, and "unwarranted deductions of fact in a complaint are not admitted as true" for purposes of testing its sufficiency, *Sinaltrainal*, 578 F.3d at 1268. Finally, the Court need not credit generalized allegations that are contradicted by specifics in the complaint or by materials that may be considered on a motion to dismiss, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007), such as matters subject to judicial notice or documents central to the plaintiff's claim and whose authenticity is not challenged, *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023).

Dismissal is required when — after disregarding labels, conclusions, unwarranted deductions, and generalities that are contradicted by specifics — a complaint's factual allegations "do not raise more than a speculative right to relief." *Hosch v. Wachovia Bank, N.A.*, 815 F. App'x 352, 353 (11th Cir. 2020).

14

**ARGUMENT**

## I.    PLAINTIFFS' MISREPRESENTATION AND RELIANCE ALLEGATIONS DO NOT SATISFY THE RULE 9(B) PLEADING REQUIREMENTS APPLICABLE TO THEIR RICO AND COMMON LAW FRAUD CLAIMS

Plaintiffs' RICO and state-law fraud claims are subject to Rule 9(b)'s heightened pleading and particularity requirements. *E.g.*, *Hosch*, 815 F. App'x at 354; *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064–68 (11th Cir. 2007). Rule 9(b) mandates that the TAC specifically identify (1) "the precise statements" alleged to be fraudulent, (2) the time and place and person responsible for them, (3) their content and the "manner in which the statements misled the Plaintiffs," and (4) what Citigroup is supposed to have gained by the alleged fraud. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

This is not a class action. Each Plaintiff must allege, individually, that Citigroup made a false statement of material fact to that Plaintiff, upon which that Plaintiff relied. As the District Court correctly held, the TAC does not.

### A.    The TAC Does Not Allege Actionable Misconduct By Citigroup

Plaintiffs state their claims are based on alleged misrepresentations by "Citigroup and/or OSA." (AOB at 10.) As the District Court appreciated, however, the overwhelming majority of the complained-of misstatements alleged

15

in the TAC were made by OSA or its agents.  None of those, nor any of the small

number of alleged misstatements attributed to "Citigroup," supports a fraud claim

*against Citigroup* (or Banamex or Citibank).

### 1.    Most Of The TAC's Alleged Misstatements Cannot Be Attributed To Citigroup

The following materials provided or presented to OSA investors or creditors

allegedly contained misleading statements or omissions: (1) the 2008 Bond

Offering Memorandum for OSA's 2008 Bond Issuance; (2) the "Pareto Materials"

for OSA's 2013 Bond Issuance; and (3) OSA's December 2013 and January 2014

Investor Presentations.  (*See* AOB at 40–41 & n.8.)  Plaintiffs claim those

materials incorporated (unspecified) misleading information from "Citigroup" (or

that Citigroup "knew" about and failed to correct).  But the TAC contains no

particularized allegations attributing those materials to Citigroup (or to Banamex

or Citibank) or suggesting that any Plaintiff, at the time, understood them to be or

to contain representations by Citigroup (or by Banamex or Citibank).  *See*

*Omnipol, A.S. v. Worrell*, 421 F. Supp. 3d 1321, 1345 (M.D. Fla. 2019) (attempted

imputation of non-party's statements to defendant did not satisfy Rule 9(b)).

The 2008 Bond Offering Memorandum was prepared by OSA's third-party

manager for that Bond Issuance.  (Vol. VI, Dkt. 187 ¶ 281.)  Plaintiffs allege, "on

information and belief," that "Citigroup" — "as trustee and collateral agent of the

2008 Bond Issuance as well as OSA's banker" — provided misleading information

to the third-party manager about OSA's finances and the cash advance facility that was incorporated in the document.  (*Id.* ¶ 274.)  No individuals or particulars are specified.  Moreover, it was Citibank (not Citigroup) that was trustee for the 2008 Bond Issuance, and it was Banamex (not Citigroup) that served as the collateral agent for that Bond Issuance and provided banking services to OSA.  (*Id.* ¶¶ 209, 211, 265.)  Finally, Plaintiffs' allegation that the fraud began in 2008 — the premise for asserting the 2008 Bond Offering Memorandum was misleading — is itself based "[o]n information and belief."  (*Id.* ¶¶ 122–23, 125, 127–29, 166.)[2]

The Pareto Materials were prepared by Pareto Securities AS as manager for the 2013 Bond Issuance.  (Vol. VI, Dkt. 187 ¶¶ 302–03, 311.)  They allegedly included information from "Citigroup and OSA" (*id.* ¶¶ 312, 320, 325, 330, 334, 338, 344), but, again, from whom at Citigroup (or at Banamex or Citibank) is not specified.  Moreover, the only specific information from the Pareto Materials identified in the TAC is a page that recites "Source: Company and Pareto Securities AS."  (*Id.* fig. 6 at 79.)

---

[2] Plaintiffs' only purported factual support for this key timing allegation is a reference to the SEC Order and OSA's financial statements.  (*Id.* ¶¶ 109 n.14, 122 n.18.)  But those documents merely note that the financing arrangement was established in 2008; nothing in them suggests OSA's fraud began at that time. *See also Otto Candies, LLC v. KPMG, LLP*, 2020 WL 4917596, at *1 n.7 (Del. Ch. Aug. 21, 2020) (Plaintiffs' "allegations of fraud during the pre-August 2013 period appear tentative, speculative, and conclusory").

17

The December 2013 and January 2014 Presentations were delivered *by OSA*, but were allegedly derived from materials prepared months earlier by personnel from Citigroup's Citi Markets subsidiary.  (*Id.* ¶¶ 222–28.)  Those Citi Markets employees are not alleged to have known of or been involved in OSA's fraud.  Moreover, the Presentations were delivered by OSA's CEO (Yáñez), OSA's Head of Investor Relations, and OSA's financial consultant *after* OSA had "revised" the older Citi Markets materials by "remov[ing] the slides of projections" and inserting different financial information "in its place" — information that is not alleged to have originated from Citi Markets (or from Citigroup, Banamex, or Citibank).  (*Id.* ¶¶ 232–33, 245.)  Indeed, the Presentation pages cited in the TAC explain "Source: Company management" (*id.* fig. 4 at 58) and "projections based on management expectations" (*id.* fig. 5 at 61).

### a.    Citigroup Cannot Be Primarily Liable For Misstatements By OSA And Its Agents

A defendant cannot be primarily liable for a misrepresentation it did not make.  *See, e.g.*, *Marriott Int'l, Inc. v. Am. Bridge Bahamas, Ltd.*, 193 So. 3d 902, 907–08 (Fla. 3d DCA 2015) (reversing fraud verdict because allegedly false letter could not be attributed or imputed to defendant simply because defendant knew of its existence; *S&S Air Conditioning Co. v. Freire*, 555 So. 2d 387, 387–88 (Fla. 3d DCA 1989) (affirming dismissal of fraud claim because complaint failed to connect defendant to the alleged misrepresentations).  Plaintiffs' vague,

conclusory, and "information and belief" allegations purporting to tie "Citigroup" (or Banamex or Citibank) to the 2008 Bond Offering Memorandum, the Pareto Materials, or the Investor Presentations fail to satisfy the most basic requirements of Rule 9(b) to specify the "who, what, when, and how" of Citigroup's supposed fraud. *See, e.g.*, *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86, 89–90 (11th Cir. 2008); *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

In addition — and regardless of a defendant's alleged involvement in creating or reviewing the documents — the reliance element necessary to impose primary liability for fraud can be satisfied only if the defendant was disclosed at the time as having played a role in the representation. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1205–06 (11th Cir. 2001); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998). Because "[k]nowing the identity of the speaker is essential to show reliance," *Affco Invs. 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 194 (5th Cir. 2010), "[t]he critical issue is the investor's understanding of who made the misleading statement," *BCJJ, LLC v. Lefevre*, 2011 WL 1296682, at *6 (M.D. Fla. Mar. 31, 2011); *e.g.*, *Bruhl v. Conroy*, 2007 WL 983228, at *2 (S.D. Fla. Mar. 27, 2007) (primary fraud liability requires that a misrepresentation was attributed to defendant "in advance of [plaintiff's] investment decision").

Nowhere does the TAC allege (much less with particularity) that any Plaintiff understood Citigroup (or Banamex or Citibank) to be making any representations in the 2008 Bond Offering Memorandum, the Pareto Materials, or the Investor Presentations.  Since "no statements attributable to [Citigroup] were ever made to Plaintiffs …, Plaintiffs could not have relied on [Citigroup] in making their investment decisions."  *Ziemba*, 256 F.3d at 1207.

### b.    Plaintiffs' Attempts To Impose Primary Liability On Citigroup For OSA's Misstatements Are Meritless

In the District Court, Plaintiffs suggested their inability to attribute OSA's representations to Citigroup does not matter because they are not pursuing federal securities claims.  But there is no difference between a federal securities fraud claim and a Florida common law fraud claim pertinent to this issue, *see, e.g.*, *Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 621 (11th Cir. 2021); *Bruhl*, 2007 WL 983228, at *8, as confirmed by cases such as *Marriott*, 193 So. 3d at 907–08, and *S&S Air Conditioning*, 555 So. 2d at 387–88.  *See also Feng v. Walsh*, 2021 WL 8055449, at *9 (S.D. Fla. Dec. 21, 2021) (dismissing fraudulent inducement claim: "Plaintiffs allege that they wired funds … because they 'relied on the misrepresentations in the Investment Portfolio' … However, [the defendant]

is not identified as having presented the Investment Portfolio to Plaintiffs"), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022).[3]

Nor may Citigroup be liable on an "omission" theory for failing to disclose OSA's misstatements.  (*See* AOB at 38–39.)  As a threshold matter, and as the District Court observed (Vol. IX, Dkt. 203 at 17), this presumes Citigroup "knew" of OSA's fraud, but the TAC contains no well-pleaded facts supporting such a conclusion.  *See infra* at 38–42.  Moreover:

Plaintiffs do not allege any fiduciary or special relationship with Citigroup supporting an affirmative disclosure duty.  *See, e.g.*, *Marriott*, 193 So. 2d at 908; *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000).  Nor is this a "partial disclosure" case — Citigroup did not make *any* disclosures to Plaintiffs, so it cannot be liable for failing to make "full" disclosure.  *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 524 F. Supp. 3d 1266, 1290 (S.D. Fla. 2021)

---

[3] None of the cases cited by Plaintiffs (*see* AOB at 39) suggests they can sue Citigroup for fraud based on transacting with OSA in reliance on materials not attributed to Citigroup.  *See Koch v. Royal Wine Merchs., Ltd.*, 907 F. Supp. 2d 1332, 1345–46 (S.D. Fla. 2012) (defendant could be liable for co-conspirator's false statements in bottle labels pursuant to specific Restatement rule for "article[s] of commerce"); *Joseph v. Norman LaPorte Realty, Inc.*, 508 So. 2d 496, 497 (Fla. 3d DCA 1987) (plaintiffs relied "through their agent" on defendant's misrepresentations made to the agent); *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 16 (Fla. 1990) (CPA could be liable in negligence for misstatements in audited financial statements that he prepared and personally delivered in connection with negotiating a loan on his client's behalf).

(disclosure obligation based on partial disclosure requires "some evidence of a statement that would trigger the further duty to disclose"); *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003) (Florida law "places a duty on one who *undertakes to disclose* material information to disclose that information fully") (emphasis added).  Finally, that Plaintiffs did not have equal opportunity to learn the allegedly undisclosed information is also inconsequential, because Plaintiffs and Citigroup were not counterparties.  *See, e.g.*, *Coffey v. WCW & Air, Inc.*, 2018 WL 4154256, at *4 (N.D. Fla. Aug. 30, 2018) ("a *seller* has a duty to disclose material information that is not equally within the ken of the *buyer*") (emphasis added); *TransPetrol*, 764 So. 2d at 880 (no disclosure duty based on alleged superior knowledge because parties were not in buyer-seller relationship).

## 2. None Of The "Citigroup" Misrepresentations Supports A Fraud Claim Against Citigroup

Plaintiffs insist the TAC contains "detailed allegations for all Plaintiffs" regarding the misrepresentations allegedly made to them by Citigroup (AOB at 11), but none of Adar, Copernico, HBK, Nordic Trustee, Waypoint, Coastline, De Hoop, Halani, or Madisa alleges any substantive communications whatsoever with Citigroup (or Banamex or Citibank).  (*See* Vol. VI, Dkt. 187 ¶¶ 403, 558, 762;

Vol. VII, Dkt 187 ¶¶ 1095, 1162, 1367, 1467, 1565, 1607.)  They cannot state a fraud claim against Citigroup (or Banamex or Citibank).[4]

The only discussions Rabobank allegedly had that included Citigroup personnel related to the management of the Rabobank Trust — at Banamex — which enabled Rabobank to receive payments for OSA services provided to Pemex using Rabobank-financed vessels.  (Vol. VII, Dkt. 187 ¶ 1619.)  The statements by Citigroup merely concerned matters related to the administration of the Trust (*id.* ¶¶ 1675, 1688, 1694) and are not alleged to have been false.[5]

_____

[4] Halani alleges that at a meeting with OSA's Yáñez in May 2013, "Citigroup employees" were also present but does not identify them or even allege they said anything.  (Vol. VII, Dkt. 187 ¶¶ 1544–46.)  De Hoop alleges it was approached by "Citigroup and OSA" regarding the 2013 Bond Issuance and was told the 2013 Bonds "offered a new means of financing to OSA."  (*Id.* ¶ 1449.)  But the TAC does not identify who from Citigroup supposedly approached De Hoop, who made the referenced statement, or how it was false.  Madisa allegedly signed a "CitiConnect" agreement with Banamex to receive payments directly from Banamex rather than OSA for its work on Pemex contracts (*id.* ¶ 1601), but the alleged communications between Madisa and Banamex (not Citigroup) respecting the agreement merely concerned its mechanics (*see id.* ¶ 1602).

[5] Rabobank also alleges, "[o]n information and belief," that unnamed "Banamex representatives" told Rabobank that Banamex was responsible for verifying OSA's receivables (*id.* ¶ 1669); and that, after subsequent meetings that, "on information and belief," included Citigroup personnel (*id.* ¶ 1680), Rabobank prepared a presentation outlining the Trust cash flow process that "incorporated" unspecified comments from unnamed Banamex personnel acting, "on information and belief," under the supervision and direction of unnamed Citigroup personnel (*id.* ¶ 1681).  Such allegations do not satisfy Rule 9(b).

Ashmore, HBK (on behalf of GPF), ICE, and Moneda allege that Citigroup made misstatements to their counsel during a call on February 21, 2014.  (Vol. VI, Dkt. 187 ¶ 488; *see* AOB at 35–36.)[6]  But these Plaintiffs merely contend in conclusory fashion that they relied on these alleged misstatements in retaining their OSA Bonds (for one week before Citigroup publicly disclosed the fraud).  (*See* Vol. VI, Dkt. 187 ¶¶ 493, 668; Vol. VII, Dkt. 187 ¶¶ 875, 1011.)  This fails to plead actionable reliance with the specificity required by Florida law to state a "holder" claim.  *See infra* at 30–31.

Plaintiffs ICE (Vol. VI, Dkt. 187 ¶¶ 796–97, 809–10, 815) and Moneda (Vol. VII, Dkt. 187 ¶¶ 937–38) reference the transmission of OSA financial statements to them by Citibank — incidental to its role as trustee for the 2008 Bonds.  (*See* AOB at 35.)  Plaintiffs assert that the "knowing dissemination" of false financial statements is actionable (AOB at 40 n.8), but no Citibank employees are alleged to have been involved in or aware of OSA's fraud or to have performed anything other than ministerial functions further to Citibank's role as trustee.  Indeed, the only statements allegedly made by them concerned administrative matters related to whether OSA had made coupon payments (Vol. VI, Dkt. 187

---

[6] GPF does not allege any other communications with Citigroup.  (*See* Vol. VI, Dkt. 187 ¶¶ 34, 682.)  The only other communications with Citigroup alleged by Ashmore are pleaded "on information and belief."  (*Id.* ¶ 456.)

¶¶ 809–10, 815) or when OSA's financial statements needed to be issued

(Vol. VII, Dkt. 187 ¶ 938).[7]

Plaintiffs also reference Candies' allegations about discussions involving

Citigroup in 2011 and 2012 concerning the restructuring of OSA's debt to Candies.

(AOB at 34–35; *see* Vol. VII, Dkt. 187 ¶¶ 1211–12, 1245–46.)  The TAC alleges

misrepresentations were made to Candies through "Citigroup/Banamex employees

***and/or*** OSA" or by an unnamed "Citigroup ICG or Banamex representative" or

unnamed "Banamex representatives."  (Vol. VII, Dkt. 187 ¶¶ 1212 (emphasis

added), 1246.)  In a similar vein, the TAC attributes the alleged statement that

OSA's debt to Candies was "quite over collateralized" (*see* AOB at 35) to a

Banamex employee.  (*See* Vol. VI, Dkt. 187 ¶ 90; Vol. VII, Dkt. 187 ¶ 1260; *infra*

at 39–40.)  The failure to identify the alleged speaker and the "blending" of

Banamex and Citigroup violates Rule 9(b).  *See, e.g.*, *Cisneros v. Petland, Inc.*,

972 F.3d 1204, 1217 (11th Cir. 2020); *Ferrell v. Durbin*, 311 F. App'x 253, 259

n.9 (11th Cir. 2009); *Brooks*, 116 F.3d at 1380–81.

Finally, Plaintiffs reference a communication Gulf's predecessor allegedly

had with "Citigroup" in April 2011.  (*See* AOB at 34; Vol. VII, Dkt. 187 ¶¶ 1489–

---

[7] Plaintiffs claim a Citibank employee "represented" to Moneda that OSA's
financial statements were "fine."  (AOB at 35.)  But the statement ("I believe they
are fine") was in reference to whether OSA was expected to timely issue its
audited financial statements.  (Vol. VII, Dkt. 187 ¶ 938.)

92.)  Again, however, the alleged speaker was a Banamex employee.  (*See* Vol. VI, Dkt. 187 ¶ 90; Vol. VII, Dkt. 187 ¶ 1491; *infra* at 39–40.)  Moreover, the TAC, as noted, pleads no facts suggesting OSA's fraud pre-dated 2013.  Nor does the TAC explain how Gulf's predecessor relied on the claimed 2011 misrepresentation in deciding how to respond to OSA's failure to make vessel lease payments two years later, in April 2013.  (*See* Vol. VII, Dkt. 187 ¶¶ 1510–14.)

## B.    The TAC Fails To Adequately Allege Reliance

Even if any misrepresentations alleged by Plaintiffs were attributable to Citigroup or otherwise sufficiently pleaded, each Plaintiff "would still have to show, on an individual basis, that [it] relied on the misrepresentations [and] suffered injury as a result."  *Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996); *see, e.g.*, *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984); *see also, e.g.*, *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–1500 (11th Cir. 1991) (a plaintiff who alleges wire fraud as a RICO predicate act cannot establish injury "by reason of" the alleged violation if she did not rely on the claimed misrepresentation).  And Plaintiffs cannot argue their "omission" allegations permit reliance to be presumed. *See, e.g.*, *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999).

Plaintiffs' reliance allegations are subject to Rule 9(b). *See, e.g.*, *Wilding*, 941 F.3d at 1128; *Am. Dental*, 605 F.3d at 1291–92.[8] Indeed, because allegations of reliance "inherently rest on information within a plaintiff's possession," "[p]articular allegations of reliance … lie at the core of Rule 9(b)'s mandate." *Xia Bi v. McAuliffe*, 927 F.3d 177, 185 (4th Cir. 2019). Thus, "[a] bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice." *Wilding*, 941 F.3d at 1128; *see, e.g.*, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1304 n.12 (11th Cir. 2003). In many different ways, Plaintiffs fail to adequately plead reliance.

### 1. Plaintiffs' Purported Reliance On The 2008 Bond Offering Memorandum And The Pareto Materials Is Inadequately Pleaded

Even were the 2008 Bond Offering Memorandum or Pareto Materials attributable to Citigroup (or Banamex or Citibank), Plaintiffs fail to plead reliance because they merely allege that those documents were "provided" to or "received" by them.[9] Absent from the TAC is an allegation that anyone *read* the documents.

---

[8] Plaintiffs' citation to *Jordan v. Scott Fetzer Co.*, 2007 WL 4287719, at *8 (M.D. Ga. Dec. 4, 2007), for the suggestion that their reliance allegations should be "viewed in [their] favor" (AOB at 41), misreads that case. The issue there was not whether the plaintiffs adequately alleged reliance. It was whether they had relied on communications sent through the mail and wires (necessary to state a RICO claim), or instead on oral representations (insufficient to state a RICO claim).

[9] *See* Vol. VI, Dkt. 187 ¶¶ 389, 395 (Adar); *id.* ¶¶ 471–72 (Ashmore); *id.* ¶ 549 (Copernico); *id.* ¶ 622 (GPF); *id.* ¶¶ 706, 732, 748 (HBK); *id.* ¶ 828 (ICE);

"A plaintiff unaware of the relevant statement … [cannot] establish reliance" on it. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011); *see, e.g.*, *Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, 910–11 (Fla. 5th DCA 2004). The awareness required to plead reliance does not come from mere exposure to or receipt of false statements. *See, e.g.*, *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 541 (Fla. 1st DCA 2018); *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So. 2d 565, 571, 572 n.3 (Fla. 3d DCA 2004). To adequately plead reliance, Plaintiffs must allege, with particularity, that someone actually read the supposedly misleading document. *See, e.g.*, *Hightower v. Cohen*, 2009 WL 9042127, at *6 (E.D.N.Y. Sept. 30, 2009); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371 (S.D. Fla. 1991). Plaintiffs' inability to plead such basic, necessary information — after four attempts, and concerning matters within their personal knowledge — dooms their claims. *See, e.g.*, *Am. Dental*, 605 F.3d at 1292 (affirming dismissal of RICO claims predicated on wire fraud because "Plaintiffs ma[d]e no allegation as to who, if anyone, read the advertisements and was misled by them"); *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60

---

Vol. VII, Dkt. 187 ¶ 1359 (Coastline); *id.* ¶ 1450 (De Hoop); *id.* ¶ 1556 (Halani); *id.* ¶ 954 (Moneda). The reliance allegations by Nordic Trustee — who does not claim any injury but seeks to recover on behalf of the 2013 Bondholders (*id.* ¶ 1037) — are even less effectual. Nordic Trustee pleads the 2013 Bondholders' reliance entirely "on information and belief." (*Id.* ¶¶ 1081 n.47, 1082 n.48, 1087 n.49, 1088 n.50.)

F.3d 734, 743–44 (11th Cir. 1995) (plaintiff could not establish reliance because its employees had not read the materials containing allegedly false statements).[10]

### 2.    Plaintiffs' Other Allegations Of Reliance Are Inadequate

Separately, Plaintiffs' uniform, formulaic reliance allegations are unacceptably conclusory.  They simply allege that had they known the truth about OSA's fraud, they would not have purchased and/or retained their OSA Bonds or done business with OSA.[11]  Such generalizations "provide[] no information about which of the specifically alleged misrepresentations and omissions, if any, induced them to purchase … or even whether they read the materials" in question.  *Fernau*, 847 F. App'x at 622 (affirming dismissal of fraud claims: "a statement that the plaintiffs would not have invested if the defendants had provided all available

---

[10] Copernico and ICE claim the 2008 Bond Offering Memorandum was "reviewed," but do not specify by whom.  (*See* Vol. VI, Dkt. 187 ¶¶ 539, 787.)  Waypoint seems to identify the reviewer, but fails to explain what the claimed review entailed.  (*See* Vol. VII, Dkt. 187 ¶ 1136.)  These generalities do not suffice because they do not explain how these Plaintiffs were supposedly misled.  *See, e.g.*, *Ambrosia Coal*, 482 F.3d at 1317 n.12; *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007).  And no case cited by Plaintiffs (*see* AOB at 42–43) suggests a plaintiff (or its representative) can have relied on a document it did not read.

[11] *See* Vol. VI, Dkt. 187 ¶ 387 (Adar); *id.* ¶¶ 422, 513 (Ashmore); *id.* ¶¶ 530, 567 (Copernico); *id.* ¶¶ 584, 688 (GPF); *id.* ¶¶ 704, 769 (HBK); *id.* ¶ 785; Vol. VII, Dkt. 187 ¶ 896 (ICE); *id.* ¶¶ 912, 1032 (Moneda); *id.* ¶¶ 1060, 1105, 1110 (Nordic Trustee); *id.* ¶¶ 1124, 1168 (Waypoint); *id.* ¶¶ 1195, 1301 (Otto Candies); *id.* ¶¶ 1336, 1373 (Coastline); *id.* ¶¶ 1404, 1473 (De Hoop); *id.* ¶¶ 1486, 1509 (Gulf); *id.* ¶¶ 1529, 1571 (Halani); *id.* ¶¶ 1585, 1613 (Madisa); *id.* ¶¶ 1633, 1707 (Rabobank).

information says nothing about whether they were persuaded to invest by—or even aware of—the specific alleged misrepresentation"); *see, e.g.*, *Wilding*, 941 F.3d at 1128 (plaintiffs failed to "allege with particularity the manner in which they relied on the defendant's statements"); *Beck v. Prupis*, 162 F.3d 1090, 1097 (11th Cir. 1998) (fraud claim deficient because no showing plaintiff actually saw, let alone relied on, any false financial statements or that omitted information was a substantial factor affecting his actions), *aff'd*, 529 U.S. 494 (2000).

Plaintiffs' criticism of the District Court's conclusion that HBK failed to plead justifiable reliance (AOB at 44–45) only underscores the TAC's inadequacy. The District Court correctly observed that none of the TAC's allegations *respecting HBK* alleges justifiable reliance. (Vol. VI, Dkt. 187 ¶¶ 767–72.) Plaintiffs respond by citing one TAC paragraph conclusorily alleging that *all* "Plaintiffs reasonably and justifiably relied on" Citigroup's alleged misstatements. (Vol. VIII, Dkt. 187 ¶ 1861.)  This is a quintessential example of a mere formulaic recitation of the elements of a claim.  By insisting that "each Plaintiff's allegations are just as specific as HBK's reliance allegations" (AOB at 44), Plaintiffs concede that all Plaintiffs' reliance allegations are just as deficient.

### 3.   The Bond Plaintiffs' Reliance Allegations Are Insufficient To State A "Holding" Claim

Finally, the Bond Plaintiffs' allegations are insufficient to state a "holding" claim — *i.e.*, that Citigroup's (or Banamex's or Citibank's) alleged misstatements

induced them to retain their OSA Bonds.  Assuming Florida law recognizes such a claim, it requires Plaintiffs to satisfy "a heightened pleading standard on the element of reliance." *Bruhl*, 2007 WL 983228, at *8; *see In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, 2013 WL 6504801, at *11–13 (S.D.N.Y. Dec. 11, 2013) (applying Florida law).  They fail.

Each Plaintiff must *specifically* allege — whether its claims are based on supposed misrepresentations or omissions — not only that it would have sold had it known the truth, but also "the amount of shares he would have sold, and when he would have sold them in relation to the time the material information should have been disclosed." *Bruhl*, 2007 WL 983228, at *9; *see Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1313–14 & n.18 (N.D. Fla. 2003) (the "specific" reliance necessary to state a holder claim requires plaintiff to "allege actions, as distinguished from unspoken and unrecorded thoughts and decisions," to separate "plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value").  The TAC contains no such allegations.  *See also Otto Candies, LLC v. KPMG LLP*, 2019 WL 994050, at *23 n.211 (Del. Ch. Feb. 28, 2019) (assuming Delaware law recognizes holder claims, "Plaintiffs have failed to sufficiently plead reliance").

31

## II.    PLAINTIFFS' RICO CLAIMS ARE ALSO DEFICIENT FOR AT LEAST TWO ADDITIONAL, INDEPENDENT REASONS

### A.    Plaintiffs Do Not Allege A Cognizable Predicate Act

Section 107 of the Private Securities Litigation Reform Act ("PSLRA") amended RICO to provide that "*no person* may rely upon *any conduct* that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation.  18 U.S.C. § 1964(c) (emphasis added).  This bar applies "broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim." *Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014).  Plaintiffs thus cannot plead wire fraud predicate acts "'if the conduct giving rise to those predicate offenses amounts to securities fraud.'" *Id.* (quoting *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999)).

Plaintiffs contend that (1) the alleged RICO Enterprise members associated with each other to fraudulently induce Plaintiffs to invest and maintain their investments in OSA (Vol. VII, Dkt. 187 ¶ 1721), (2) the claimed wire fraud predicate acts were in furtherance of a common purpose to fraudulently induce their investments in OSA (Vol. VIII, Dkt. 187 ¶ 1789), (3) the 2008 and 2013 Bonds were issued "[i]n connection with and in furtherance of the fraud" (Vol. VI, Dkt. 187 ¶ 256), and (4) the alleged wire fraud predicate acts induced their purchase of OSA's 2008 and/or 2013 Bonds (Vol. VIII, Dkt. 187 ¶¶ 1737, 1741,

1770, 1772).  Each Bondholder and Investment Manager Plaintiff contends it was misled by the alleged wire fraud predicate acts to purchase and retain OSA's Bonds (*id.* ¶¶ 1799–1816), and *all* Plaintiffs, including the Shipping Plaintiffs and Rabobank, assert that the wire fraud predicate acts were committed in furtherance of a common purpose to defraud *all* Plaintiffs (Vol. VII, Dkt. 187 ¶¶ 1716, 1721–22; Vol. VIII, Dkt. 187 ¶¶ 1736–38).

Because the conduct alleged as RICO predicate acts — material misstatements that fraudulently induced purchases of OSA Bonds (Vol. VIII, Dkt. 187 ¶¶ 1737, 1741, 1770, 1772, 1799–1816) — "implicate[s]" conduct actionable as securities fraud, it cannot support a RICO claim.  *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000); *see, e.g.*, *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1249 (11th Cir. 2016) (mail and wire fraud relating to securities investments could not serve as predicate acts); *Bald Eagle*, 189 F.3d at 330 (misstatements allegedly inducing plaintiffs' investments could not support RICO claim even if conduct also constituted wire fraud).

It makes no difference that Plaintiffs assert "holder" claims.  Although such claims are not viable under the federal securities laws, Section 107 is focused on the "conduct" alleged, not on whether the RICO plaintiff could sue under the securities laws.  *Lerner v. Colman*, 26 F.4th 71, 78–79 (1st Cir. 2022).  If the complained-of conduct would constitute securities fraud if done in connection with

the purchase or sale of securities, the PSLRA bar applies "regardless of whether the plaintiff [would have] standing to pursue a securities fraud claim." *Licht*, 567 F. App'x at 693; *see, e.g.*, *Woods v. Michael*, 2021 WL 3355459, at \*3–4 (11th Cir. Aug. 3, 2021) (§ 107 barred RICO claims even though Securities Act claims were time-barred); *MLMSK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277-80 (2d Cir. 2011) (§ 107 applied even though plaintiff alleged aiding and abetting, which cannot provide a private right of action under federal law).  Thus, Plaintiffs' "purchaser or seller status" is not relevant to the Section 107 inquiry, *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731 (D. Del. 2003), and Plaintiffs cannot evade the statute's bar on a theory that they "have merely been fraudulently induced to *retain*" their OSA Bonds.  *Davies v. GetFugu, Inc.*, 2010 WL 11597458, at \*6 (C.D. Cal. Aug. 26, 2010) (emphasis in original).

Moreover, *all* Plaintiffs allege that *all* the predicate acts were committed in furtherance of a common purpose to defraud "OSA's current and prospective investors, *creditors, and vendors*" and to "intentionally mislead investors, *creditors and vendors*" (App. Vol. VIII, Dkt. 187 ¶ 1737, emphasis added), and, further, that the alleged predicate acts — with respect to *all* Plaintiffs (*see id.* ¶¶ 1739–88) — "had the same or similar participants, victims, methods of commission and results and *were related and not isolated events*" (*id.* ¶ 1789, emphasis added).  In other

34

words, the Shipping Plaintiffs and Rabobank rely on the same complained-of conduct as the other Plaintiffs to support their RICO claims.

"Having alleged … that [Citigroup's] acts were part of a single fraudulent scheme, [the Shipping Plaintiffs and Rabobank] cannot now divide the scheme into its various component acts." *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 373 (S.D.N.Y. 2004).  Because Plaintiffs allege "the wrongful acts were committed as part of a single fraudulent scheme, all of the acts must be considered together for securities fraud purposes." *Jacobini v. KPMG LLP*, 314 F. Supp. 2d 1172, 1179 (M.D. Fla. 2004).  The PSLRA bar thus forecloses *all* Plaintiffs' RICO claims.  *See Bald Eagle*, 189 F.3d at 329-30 (rejecting argument that § 107 did not apply because only some predicate acts were actionable as securities fraud, explaining that all the challenged conduct was "an integral part" of the alleged fraud); *Sensoria, LLC v. Kaweske*, 2022 WL 204606, at *19 (D. Colo. Jan. 24, 2022) ("The TAC portrays a unified fraud scheme.… That degree of interrelatedness and the PSLRA bar's broad scope warrant applying the bar to Plaintiffs' RICO claims."); *Adams v. Rothstein*, 2012 WL 1605098, at *3–4 (S.D. Fla. May 8, 2012) (dismissing complaint because allegedly "interrelated" predicate acts were all "sufficiently connected" to conduct subject to PSLRA bar).

## B.    The TAC Fails To Plead Continuity

To establish a pattern of racketeering, Plaintiffs must plead particularized facts demonstrating "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (emphasis in original); *see Jackson*, 372 F.3d at 1265.  "Continuity" can be satisfied by reference to (1) "a closed period of repeated conduct" (closed-end continuity), or (2) "past conduct that by its nature projects into the future with a threat of repetition" (open-ended continuity).  *H. J. Inc.*, 492 U.S. at 241.  The TAC meets neither test.

*First*, the TAC only identifies with particularity fraudulent advances over 150 days from September 2013 through February 2014.  (Vol. VI, Dkt. 187 ¶¶ 140, 166.)  "In this Circuit, closed-ended continuity cannot be met with allegations of schemes lasting less than a year."  *Ferrell*, 311 F. App'x at 256; *see, e.g.*, *Jackson*, 372 F.3d at 1266–67.  Because Plaintiffs' allegations of closed-ended continuity rest on their unsupported "information and belief" claim that the fraud started in 2008, *see supra* at 17 & n.2, closed-end continuity is not adequately pleaded.

*Second*, for open-ended continuity, Plaintiffs must allege the racketeering was Citigroup's "regular way of doing business" or "threatened repetition in the future."  *Jackson*, 372 F.3d at 1267.  The TAC negates any suggestion the alleged RICO violations were Citigroup's regular way of doing business by pleading that

36

they violated Citigroup's policies.  (Vol. VI, Dkt. 187 ¶¶ 114, 123.)  *See Jackson*, 372 F.3d at 1267–68.  Moreover, the TAC acknowledges that in February 2014 Citigroup ended the financing and publicly disclosed OSA's fraud, and then terminated Banamex employees.  (Vol. VI, Dkt. 187 ¶¶ 170, 172.)  *See Jackson*, 372 F.3d at 1268–69 (no open-ended continuity where activity was punished and "virtually certain" to not continue); *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 221 (S.D.N.Y. 2002) (no open-ended continuity where scheme was uncovered and stopped).  As there is "no longer a working relationship" involving OSA, there is no opportunity for the alleged racketeering to persist.  *Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 977 (11th Cir. 2015).

## III.    PLAINTIFFS' RICO AND COMMON LAW CONSPIRACY CLAIMS WERE PROPERLY DISMISSED

As the District Court correctly noted (Vol. IX, Dkt. 203 at 9–10), Plaintiffs' failure to plead an actionable misrepresentation or reliance compels dismissal of their RICO and common law conspiracy claims.  *Am. United Life Ins.*, 480 F.3d at 1067–68; *Jackson*, 372 F.3d at 1269.  And the RICO conspiracy claims are independently barred due to Plaintiffs' failure to plead cognizable predicate acts or continuity.  *Rogers*, 241 F. App'x at 609; *Howard*, 208 F.3d at 751.

Equally correct was the District Court's conclusion that the conspiracy claims also fail because Plaintiffs do not plead, with the particularity demanded by Rule 9(b), that Citigroup had knowledge of the underlying fraud and agreed with

OSA to defraud Plaintiffs. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950–51 (11th Cir. 1997); *Raimi v. Furlong*, 702 So. 2d 1273, 1285 (Fla. 3d DCA 1997). Plaintiffs have not alleged, as they must, *facts* respecting Citigroup's fraudulent intent and supposed knowledge of and knowing participation in OSA's fraud. *W. Coast Roofing*, 287 F. App'x at 86; *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989).

## A.    Plaintiffs Improperly Conflate Banamex And Citigroup To Ascribe Banamex's Supposed Knowledge To Citigroup

*First*, Plaintiffs' argument based on Citigroup's then-CEO's "admissions" (AOB at 24–25; Vol. VI, Dkt. 187 ¶ 172) mischaracterizes the underlying documents, as the District Court appreciated. Those documents say nothing about whether the terminated employee was a Citigroup or Banamex employee. (*See* Vol. II, Dkt. 83-4.) Plaintiffs, however, acknowledged in their verified complaint in another action that he was a Banamex employee. *See* Verified Complaint ¶ 275, *Otto Candies, LLC v. KPMG LLP*, C.A. No. 2018-0435-MTZ (Del. Ch. June 13, 2018). And because the TAC's only particularized facts establish that the financing program was administered and implemented within Banamex (*e.g.*, Vol. VI, Dkt. 187 ¶¶ 50, 73, 117), the TAC provides no support for Plaintiffs' characterization of the cited documents as admissions that *Citigroup* employees were involved in the fraud.

38

*Second*, equally conclusory is Plaintiffs' allegation that Mexican regulators found 10 "Citigroup employees" were criminally involved in the fraud. (AOB at 9, 28; Vol. VI, Dkt. 187 ¶¶ 176–77 & nn. 29, 31.) The TAC explains that the individuals "who stood to gain" from the scheme were Banamex employees (Vol. VI, Dkt. 187 ¶ 117; *see SEC Order*, at *5 ¶¶ 21–23), and that Mexican authorities charged only Banamex employees (Vol. VI, Dkt. 187 ¶¶ 179–81).

Indeed, the TAC confirms three of the 10 supposed "Citigroup" employees worked "in Mexico" and in any event merely alleges, "[o]n information and belief," that they supervised and managed "cash advance product analysts," not that they themselves had any direct or personal involvement in the OSA cash advance program.[12] As for the other seven — including the individual who Plaintiffs elsewhere pleaded was a Banamex employee — five are alleged to have been responsible for verifying OSA's cash advance requests and/or the Pemex work estimates or contracts with OSA,[13] and the other two were signatories to the "Regulatory Contract" between OSA and Banamex.[14] As noted, the TAC confirms the cash advance program existed "within Banamex" (Vol. VI, Dkt. 187 ¶ 73) and

---

[12] *See* Vol. VIII, Dkt. 187-3 regarding Torres-Lebrija, Castillo-Guerrero, and Salgado.

[13] *See* Vol. VIII, Dkt. 187-2 & 187-3 regarding Añorve, Cervantes-Murillo, Ramirez, Perez-Elizundia, and Ruiz-Martinez.

[14] *See* Vol. VIII, Dkt. 187-2 & 187-3 regarding Granja and Ortega-Brehm.

that "Banamex provided [the] cash advances to OSA" (*id.* ¶ 50). Further, the TAC states the Regulatory Contract was signed "on behalf of Banamex" (*id.* ¶ 90) and concerned Banamex's implementation of the cash advance facility (*id.* ¶ 106).[15]

*Third*, Plaintiffs' reasons why Citigroup "must have been aware of the fraud" (AOB at 29) are also insufficient. The only allegations in the TAC about "Citigroup" being aware of the supposed inconsistency between the size of the advances and OSA's underlying Pemex contracts are about *Banamex* employees. (*See* Vol. VI, Dkt. 187 ¶¶ 110–11, 148–53, 176–77 & nn. 29, 31.) The claim that Citigroup had an "intimate, multi-faceted relationship with OSA" (AOB at 29) is based on (i) trusts OSA established "in Banamex's trust division" (Vol. VI, Dkt. 187 ¶ 154) and (ii) matters having nothing to do with the cash advance program (*id.* ¶ 208). And the "Citigroup employees" who supposedly had a role in approving the cash advances (AOB at 30) were Banamex employees, as discussed.

---

[15] Merely labelling these individuals "Citigroup ICG" employees (*see, e.g.*, AOB at 7, 35) does not mean *Citigroup* had knowledge of their conduct respecting the cash advance program. *See SEC Order*, at *2 ¶ 5 (even though the financing facility was within the ICG banking division, "Banamex had its own employees in Mexico that were responsible for implementing and monitoring Banamex's accounts receivable factoring facility"); *see also Mayagüez S.A. v. Citibank, N.A.*, 2022 WL 901627, at *40 (S.D.N.Y. Mar. 25, 2022) (ICG is merely a group description assigned to certain clients; the placement of a client within ICG does not demonstrate the subsidiary was acting as Citigroup's agent for that client).

Nor can the alleged knowledge of Banamex employees be imputed to Citigroup. *See Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *4 n.5 (S.D. Fla. Sept. 26, 2018) (parent's alleged knowledge of fraud not imputed to subsidiary); *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009) (no rule "requir[es] the imputation of a subsidiary's knowledge to its parent"); *see also In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999) (court should not presume intentional misconduct from parent's reliance on subsidiary's faulty internal controls).

Plaintiffs' allegations respecting Banamex personnel thus cannot serve as the basis for alleging that *Citigroup* was a knowing participant in the fraud. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 829 (8th Cir. 2003) (subsidiary's guilty plea did not indicate parent knew of the scheme or subsidiary's employees' wrongful conduct); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (declining to impute motive to parent based on actions of subsidiary's employee; "whether [subsidiary] defrauded plaintiffs and whether its parent … defrauded plaintiffs are different questions"); *In re Nokia ERISA Litig.*, 2011 WL 7310321, at *4 n.5 (S.D.N.Y. Sept. 6, 2011) (parent's alleged fraud is not alone a plausible basis for imputing its knowledge to subsidiary); *Defer LP v. Raymond James Fin., Inc.*, 2010 WL 3452387, at *8–9 (S.D.N.Y. Sept. 2, 2010) (refusing to impute one affiliate's knowledge to another); *see also Cisneros*, 972 F.3d at 1213–14

(franchisor-franchisee relationship could not alone suffice to allege common fraudulent intent); *Davidson v. Wilson*, 763 F. Supp. 1470, 1472 n.3 (D. Minn. 1991) (corporate affiliation not enough to show agreement to conspire), *aff'd*, 973 F.2d 1391 (8th Cir. 1992).[16]

### B.    Plaintiffs' Scienter Allegations Are Unsupported, Implausible, And Contradicted By The TAC Itself

Moreover, to satisfy Rule 9(b), a plaintiff must allege with particularity what the defendant supposedly gained by the alleged fraud. *See supra* at 15. Here, Plaintiffs' claim that Citigroup benefitted from the fraud — the linchpin for their contention that Citigroup knew of and participated in the fraud — is affirmatively contradicted by the very evidence they cite as support for that allegation. *See Crenshaw*, 556 F.3d at 1292. Specifically, although the TAC relies on the SEC Order as supposedly evidencing Citigroup's knowing participation in the fraud (*e.g.*, Vol. VI, Dkt. 187 ¶ 122 n.18), that Order (i) fined Citigroup for lacking

---

[16] No case cited by Plaintiffs discusses or concerns whether the knowledge of a subsidiary's employee may be imputed to the subsidiary's parent. *See, e.g.*, *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1095–96 (11th Cir. 2017). And Plaintiffs' reliance on *In re Marsh & McLennan Companies Securities Litigation*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006), for the proposition that "Banamex's knowledge can be imputed to Citigroup if it acted as Citigroup's agent" (AOB at 31 n.5) is mistaken. In that case, the parent's scienter was found to be sufficiently alleged based on allegations of the parent's *own* awareness of and complicity in the misbehavior at its subsidiary. *See* 501 F. Supp. 2d at 482–83. *See also Defer LP*, 654 F. Supp. 2d at 217 (discussing *Marsh*).

sufficient internal controls *to detect* OSA's fraud, and (ii) explained that, as a result, Citigroup (as Banamex's owner) lost nearly $500 million due to OSA's fraud. *SEC Order*, 2018 WL 3913653, at *1–4.

Plaintiffs' theory for Citigroup's supposed motivation to knowingly participate in the fraud makes no sense. *See Kalnit v. Eichler*, 264 F.3d 131, 140–41 (2d Cir. 2001) (economically nonsensical allegations cannot yield a reasonable inference of fraudulent intent); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1328 (M.D. Fla. 2002) (lack of plausible motive "militates in favor of a finding of lack of scienter"). It is implausible in the extreme that Citigroup would jeopardize Banamex's banking relationship with Pemex — "one of the largest state-owned enterprises in the world" (Vol. VI, Dkt. 187 ¶ 73) — for the chance of comparatively modest interest payments from OSA (*id.* ¶¶ 82, 113, 115). This is especially so given that Citigroup itself (through Banamex) logically would be (and was) "on the hook" when Pemex refused to reimburse the unauthorized advances. *See Cisneros*, 972 F.3d at 1218–19.

Plaintiffs try to address the illogic upon which their fraud theory is based by alleging — "[o]n information and belief" — that Pemex reimbursed Banamex for the unauthorized OSA advances. (Vol. VI, Dkt. 187 ¶¶ 15, 145, 190.) Plaintiffs are not entitled to have such an unadorned and inherently improbable allegation credited. *See, e.g.*, *Mann*, 713 F.3d at 1315; *Sinaltrainal*, 578 F.3d at 1260;

*Aldana*, 416 F.3d at 1248. "If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in such conclusory fashion." *U.S. ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002); *see Glock v. Glock*, 247 F. Supp. 3d 1307, 1314–15 (N.D. Ga. 2017) (complaint did not satisfy 9(b) because key components of the scheme were alleged on information and belief unsupported by specific facts).

Not only is this keystone allegation unsupported by any specific facts, it is contrary to the SEC Order, to Citigroup's SEC filings (*e.g.*, Dkt. 192-2 at 218, confirming an unreimbursed $500 million loss),[17] and to the TAC itself — which explains that in 2010 Pemex refused to reimburse Banamex for funds advanced based on improperly validated documents. (Vol. VI, Dkt. 187 ¶ 125; *see SEC Order*, 2018 WL 3913653, at *6 ¶¶ 28(a), 31.) Particularly given this history, Plaintiffs' "information and belief" allegation that Pemex nevertheless agreed to reimburse Banamex in 2013–14 for advances made on forged and fraudulent

---

[17] *See In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008) (if fraud allegations conflict with publicly-filed disclosure documents, "the disclosure documents control, and the court need not accept the allegations as true"); *see also* Verified Complaint ¶¶ 288–90, *Otto Candies, LLC v. KPMG LLP*, C.A. No. 2018-0435-MTZ (Del. Ch. June 13, 2018) (acknowledging losses from OSA fraud were recorded on Citigroup's books and records).

documents is an unacceptably speculative predicate for this multi-billion-dollar lawsuit.[18]

## IV.    PLAINTIFFS' AIDING AND ABETTING CLAIMS WERE PROPERLY DISMISSED

To state a claim for aiding and abetting fraud under Florida law (assuming Florida recognizes such a claim), Plaintiffs must allege, in compliance with Rule 9(b), that Citigroup (1) knew of the primary, underlying fraud and (2) substantially assisted its commission. *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). They have not.

### A.    The TAC Does Not Adequately Plead Citigroup's Actual Knowledge Of OSA's Fraud

Plaintiffs' argument that the District Court erred in requiring particularized facts giving rise to a "strong inference" of Citigroup's actual knowledge of OSA's fraud (AOB at 20–24) is incorrect on the law. *See, e.g.*, *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. Aug. 21, 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014); *Lawrence v. Bank of Am., N.A.*, 2010 WL 3467501, at *3 (M.D.

---

[18] Plaintiffs have suggested the Mexican courts' disallowance of Banamex's claims in OSA's bankruptcy (Vol. VI, Dkt. 187 ¶¶ 188–90) supports their reimbursement allegation. But a finding that Banamex "failed to demonstrate that OSA owed it any cash advances" (*id.* ¶ 190) says nothing about whether Pemex voluntarily (and counterintuitively) reimbursed Banamex. Indeed, the disallowance was because the "accounting certificate" provided by Banamex was insufficiently specific and therefore "did not prove Banamex's claims." (*Id.*; *see* Dkt. 191-4 ¶ 28 & Ex. 8.)

Fla. Aug. 30, 2010), *aff'd*, 455 F. App'x 904 (11th Cir. 2012); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244–45 (M.D. Fla. 2013).[19]

Plaintiffs' argument is also beside the point. That Rule 9(b) allows knowledge to be averred "generally" does not mean it may be averred conclusorily, *Iqbal*, 556 U.S. at 686; *Lawrence*, 2010 WL 3467501, at *3, as even Plaintiffs' authorities recognize, *see Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 471–72 (6th Cir. 2011); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009). The TAC must therefore (i) plead *facts* (ii) demonstrating Citigroup's *actual knowledge* of OSA's fraud. *Perlman*, 559 F. App'x at 993; *Lawrence*, 455 F. App'x at 907. Plaintiffs' aiding and abetting claim fails because the TAC lacks specifics suggesting Citigroup's actual knowledge under either a "strong" or "plausible" inference standard.

---

[19] Notably, no case Plaintiffs cite to dispute the "strong inference" standard involved an aiding and abetting claim, save *Sun Life Assurance Company of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018). However, the *Sun Life* quote that Plaintiffs reference (AOB at 21) is from the court's discussion of the plaintiff's tortious interference claim; the court's discussion of the aiding and abetting claim did not address the "strong inference" standard. *See* 904 F.3d at 1214–16. That standard is well-settled in the aiding and abetting context. *See, e.g.*, *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2014); *Trust Real Estate Ventures, LLC v. Desnick*, 2018 WL 4523333, at *6 (Fla. 11th JCC July 2, 2006). *See also MP, LLC v. Sterling Holding, LLC*, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (citing *Perlman*, *Lawrence*, and *Wiand* with approval).

As discussed, Plaintiffs' allegations of actual knowledge based on the supposed involvement of "Citigroup" employees in the fraud are entirely inadequate. *See supra* at 38–40. Nor are allegations that Citigroup disregarded "red flags" or atypical activities or transactions putting it on notice of the fraud, that it violated its internal policies, or that because of its supposed relationship with OSA it "must" or "should" have been aware of OSA's fraud (*e.g.*, Vol. VI, Dkt. 187 ¶¶ 119, 137, 144), sufficient to establish actual knowledge. *See, e.g.*, *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014); *Perlman*, 559 F. App'x at 993–94; *Lawrence*, 455 F. App'x at 907; *Isaiah v. JPMorgan Chase Bank, N.A.*, 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017); *Anderson v. Branch Banking & Tr. Co.*, 2014 WL 11706453, at *7 (S.D. Fla. May 19, 2004).

### B. The TAC Does Not Adequately Allege That Citigroup Substantially Assisted OSA's Fraud

"Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Chang*, 845 F.3d at 1098. Providing "basic banking services" does not constitute substantial assistance. *Lawrence*, 2010 WL 3467501, at *5; *see ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005); *see also Republic of Panama*, 119 F.3d at 950 ("routine banking transactions" do not support an inference of fraudulent intent).

47

To the extent Plaintiffs (barely) discuss this element (*see* AOB at 19 & n.1), they fail to identify facts in the TAC purporting to demonstrate substantial assistance on the part of *Citigroup*.  Instead, they point to the cash advances, credit line, and debt refinancing assistance provided to OSA by Banamex or other Citigroup subsidiaries, or invoke Citibank's role as trustee for OSA's 2008 Bond Issuance.  And Plaintiffs' reliance on alleged misrepresentations supposedly made to them by "Citigroup" fails for reasons already discussed.  *See supra* at 22–26.

## V.   PLAINTIFFS' VICARIOUS LIABILITY CLAIMS WERE PROPERLY DISMISSED

As the District Court correctly held, before Citigroup may be vicariously liable for torts allegedly committed by Banamex (or Citibank), Plaintiffs must adequately plead that Banamex (or Citibank) committed an underlying tort. *Navigators Ins. Co. v. Markel Am. Ins. Co.*, 477 F. App'x 596, 598 (11th Cir. 2012); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1348 (S.D. Fla. 2018).  Thus, Plaintiffs' failure to plead that any actionable misrepresentation or omission was made to them by (or can be attributed to) either Banamex or Citibank, *see supra* at 16–26, or that Plaintiffs relied on any such misstatements, *see supra* at 26–31, defeats their vicarious liability claims against Citigroup.

Those claims are also deficient for at least two additional reasons.

## A.    Plaintiffs' Vicarious Liability Claims Are Time-Barred

Plaintiffs' vicarious liability claims are subject to a four-year limitations period, Fla. Stat. § 95.11(3)(p) (2005); *see Doe v. Emerson*, 2006 WL 2971314, at *3 (Fla. 9th JCC June 2, 2006), but Plaintiffs waited nearly eight years after OSA's fraud was publicly revealed to assert them.  And Plaintiffs cannot rely on "relation back" because nothing in their prior complaints suggested Citigroup faced *secondary* liability for its subsidiaries' conduct, as opposed to *primary* liability for its own conduct.

Rule 15(c)(2) relation back is "to be used for a relatively narrow purpose." *Pruitt v. U.S.*, 274 F.3d 1315, 1318 (11th Cir. 2001).  Its function is to allow correction of "technical deficiencies" or "otherwise inconsequential pleading errors" that might result in dismissal on limitations grounds, not to permit the assertion of "an entirely new claim based on a different set of facts." *Id.*  To relate back, the otherwise untimely claim must arise from the same facts as the initial claim, "not from separate conduct or a separate occurrence in both time and type." *Davenport v. U.S.*, 217 F.3d 1341, 1344 (11th Cir. 2000).

Plaintiffs originally asserted that Citigroup was "independently liable" for its own conduct in supposedly directing the alleged fraud, as this Court stressed in reversing the *forum non* dismissal of Plaintiffs' Amended Complaint.  *Otto Candies*, 963 F.3d at 1343; *see id.* at 1341 ("[a]s we read the complaint, this is a

dispute focused on Citigroup's conduct"); *id.* at 1342 ("the complaint's primary allegations are about Citigroup's involvement in the scheme"). Their newly-asserted vicarious liability claims, however, purport to impose liability on Citigroup regardless of whether Citigroup itself engaged in any misconduct. Plaintiffs' new theory is that Citigroup can be liable for the alleged misconduct of Banamex and/or Citibank, based on principal-agent and agency allegations never before pleaded. (Vol. VIII, Dkt. 187 ¶¶ 1961, 1973.)

This is far from a "technical" or "inconsequential" amendment. Indeed, "Florida law is clear that in order to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action." *Gen. Asphalt Co., Inc. v. Bob's Barricades, Inc.*, 22 So. 3d 697, 699 (Fla. 3d DCA 2009); *see Goldschmidt v. Holman*, 571 So. 2d 422, 423–24 & n.5 (Fla. 1990). Plaintiffs never did so, and in fact affirmatively disclaimed that they sought to do so. *See infra* at 52.

Moreover, their belated actual and/or apparent agency theories implicate new factual allegations and disputes. *See, e.g.*, *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1236–37, 1249–52 (11th Cir. 2014). Because Plaintiffs' vicarious liability claims implicate distinct conduct and require proof of different underlying facts, they cannot relate back to the original complaint, even if they arise from the same context or circumstances. *See, e.g.*, *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (new negligence claim did

50

not relate back to original because new claim challenged different conduct by defendant); *Pruitt*, 274 F.3d at 1319 (amendments to habeas petition alleging trial errors did not relate back to petition alleging sentencing errors); *Davenport*, 217 F.3d at 1345–46 (stressing that "occurrence" as used in Rule 15 should not be applied at "too high a level of generality," and holding claims that counsel was ineffective for reasons different from those originally asserted did not relate back); *Moore v. Baker*, 989 F.2d 1129, 1131–32 (11th Cir. 1993) (amended complaint focusing on defendant-doctor's actions during and after surgery did not relate back to complaint focusing on his actions before surgery).

### B.    Plaintiffs Should Be Judicially Estopped From Asserting Their New Vicarious Liability Claims

Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process by prohibiting parties who have successfully asserted one position in a case from subsequently asserting a contrary position. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see, e.g.*, *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285–86 (11th Cir. 2002) (courts have flexibility in applying the doctrine based on the particular facts). That is precisely what Plaintiffs are doing by asserting vicarious liability claims only after defeating *forum non conveniens* dismissal by convincing this Court that their claims concerned Citigroup's conduct in the United States, rather than Banamex's conduct in Mexico.

Plaintiffs have repeatedly represented that their claims concerned Citigroup's conduct in the United States.  (*See, e.g.*, Vol. III, Dkt. 85 at 1–2.) Indeed, the first sentence of their brief on appeal from the *forum non* dismissal complained that the District Court had improperly dismissed their lawsuit against "an *American* defendant over wrongdoing that took place primarily on *American* soil."  (Appellants' Opening Brief at 1, No. 18-12663 (11th Cir. Aug. 22, 2018) (emphasis in original)); *see also, e.g.*, *id.* at 18 (explaining that Plaintiffs had chosen to sue a U.S. defendant "for conduct primarily in the United States" and their complaint "focus[ed] on Citigroup's conduct in the United States," not the conduct of "Mexican entities in Mexico").)  It was specifically based on the "domestic nature of the complaint," *Otto Candies*, 963 F.3d at 1344, that this Court reversed the District Court:

- "the plaintiffs do not complain of conduct or injuries occurring primarily in Mexico"

- "plaintiffs' allegations [are that] Citigroup directed a scheme and engaged in acts in furtherance of that scheme from the United States"

- "this is a dispute focused on Citigroup's conduct in the United States"

- the "thrust" of the complaint is that "Citigroup directed the scheme and caused the plaintiffs' injuries from its offices in the United States"

- if "plaintiffs are correct that Citigroup is independently liable for its alleged role in overseeing, directing, or participating in the scheme, then presumably the United States would be the most convenient forum"

*Id.* at 1341–43.

Having secured reinstatement of this action by insisting they sought to hold Citigroup *independently* liable for its *own* conduct *in the United States*, Plaintiffs now assert the opposite on their vicarious liability claims — that Citigroup can be *secondarily* liable under agency theories for the conduct of a Mexican entity, Banamex, occurring *in Mexico*. This newborn theory is exactly the type of calculated assertion of divergent positions prohibited by judicial estoppel.

## VI.  PLAINTIFFS' REASSIGNMENT REQUEST IS BASELESS

The only authority Plaintiffs cite for their extraordinary reassignment request is *Chudasama v. Mazda Motor Corporation*, 123 F.3d 1353 (11th Cir. 1997) — where it was found the district court "effectively abdicate[d] its responsibility to manage [the] case … and permit[ted] excessive and dilatory discovery tactics [by one party] to run amok," resulting in "draconian sanctions, including the entry of a

53

default," against the other. *Id.* at 1356; *see id.* at 1373 (reassignment warranted given "[t]he extent of the judge's abuse of discretion—and the partiality of the practices constituting that abuse," such as "delegating the task of drafting sensitive, dispositive orders to plaintiffs' counsel, and then uncritically adopting [them] nearly verbatim").

Here, in sharp contrast, Plaintiffs disclaim any suggestion of partiality by Judge Gayles. (AOB at 48.) There is thus no basis to conclude any mistake by him (and we submit there was none) was "willful or malicious" or anything other than a "garden-variety error[] of law" that does not justify reassignment. *AcryliCon USA, LLC v. Silikal GMBH & Co.*, 46 F.4th 1317, 1331 (11th Cir. 2022); *see, e.g.*, *White v. Berger*, 769 F. App'x 784, 791 (11th Cir. 2019). This is especially so given that, "although the case is still at the pleading stage," Judge Gayles over several years "has expended significant effort on the not-so-simple issues" presented by Plaintiffs' sprawling allegations. *See Stargel v. SunTrust Banks, Inc.*, 791 F.3d 1309, 1312 (11th Cir. 2015).

## CONCLUSION

The judgment should be affirmed.

Dated:  December 6, 2023                Respectfully submitted,

                                       /s/ *Adam S. Hakki*
                                       Adam S. Hakki
                                       John Gueli
                                       SHEARMAN & STERLING LLP
                                       599 Lexington Avenue
                                       New York, NY 10022
                                       Tel: (212) 848-4000
                                       ahakki@shearman.com
                                       jgueli@shearman.com

                                       Michael Mitchell
                                       SHEARMAN & STERLING LLP
                                       401 9th Street, NW
                                       Washington, D.C. 20004
                                       Tel: (202) 508-8000
                                       michael.mitchell@shearman.com

                                       Manuel A. Garcia-Linares
                                       Georgia A. Thompson
                                       DAY PITNEY LLP
                                       396 Alhambra Circle
                                       14th Floor
                                       Miami, Florida 33134
                                       (305) 373-4000
                                       mgarcialinares@daypitney.com
                                       gthompson@daypitney.com

                                       *Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,991 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman in Microsoft Word in 14-point type.

Dated:  December 6, 2023

/s/ *Adam S. Hakki*
Adam S. Hakki
*Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I, Adam Hakki, hereby certify that I electronically filed the foregoing "Brief of Defendant-Appellee" with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on December 6, 2023.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  December 6, 2023

/s/ *Adam S. Hakki*

Adam S. Hakki

*Counsel for Defendant-Appellee*

2024079455.10